[No. B110631. Second Dist., Div. Six. Nov. 23, 1998.]

JOHN W. KELLY et al., Plaintiffs and Appellants, v.
VONS COMPANIES, INC., Defendant and Respondent.

COUNSEL

Federico C. Sayre and Thomas A. Brill for Plaintiffs and Appellants.

Faustman, Carlton, DiSante & Freudenberger, Marie D. DiSante and Denise M. McGorrin for Defendant and Respondent.

## OPINION

**COFFEE, J.**—John W. Kelly and 27 other individual plaintiffs (appellants) appeal a summary judgment in favor of respondent Vons Companies, Inc. (Vons). Here we hold that issues adjudicated during a labor arbitration may be given collateral estoppel effect in an employee's subsequent lawsuit for fraud and negligent misrepresentation. We affirm the judgment.

### FACTS

In early 1992, respondent Vons purchased several Williams Brothers Markets (Williams Brothers) in the Santa Maria area and acquired a trucking facility as part of the deal. Williams Brothers had a collective bargaining agreement with Teamsters Union Local 381 (Local 381). Teamsters Union Local 63 (Local 63) represented Vons truck drivers in the Los Angeles area.

Vons sent Local 381 a letter agreeing to assume Williams Brothers' obligations under their collective bargaining agreement. It hired several drivers through advertisements run in the Santa Maria area in addition to drivers who had worked for Williams Brothers. Hirees were required to join Local 381.

### THE LOCAL 63 ARBITRATION

Local 63 filed a grievance claiming that Vons was contractually obligated to hire its members for the Santa Maria work. That grievance eventually went to arbitration.

On February 15-16, 1992, Vons held an orientation meeting and advised certain Santa Maria drivers of the dispute with Local 63. Vons informed the drivers that they did not anticipate any job losses for Local 381 members as a result of that dispute.

In May of 1993, the arbitrator who heard the Local 63 grievance ruled that Local 63 drivers were entitled to the Santa Maria work. The arbitrator found that Vons had failed to comply with the terms of an oral agreement with Local 63 union officials. The arbitrator did not order Vons to transfer the Santa Maria work to Local 63, but allowed the parties 90 days to reach an agreement as to remedy. Vons and Local 63 were unable to reach such an

agreement, and eventually the arbitrator issued a second award, which required Vons to pay over $250,000 in back wages to Local 63 members.

In March of 1994, Vons notified its workers that it was closing the Santa Maria trucking facility for "economic reasons." Vons offered the truck drivers other jobs in the Los Angeles area, although they were not all full-time positions.

### THE LOCAL 381 ARBITRATION

Local 381 filed a grievance protesting the closure of the Santa Maria facility. The grievance was not resolved and the matter was referred to arbitration as provided in the collective bargaining agreement.

The union's position at the arbitration was that Vons had acted in bad faith and breached its collective bargaining agreement by closing the Santa Maria facility. It claimed that Vons knew that Local 63 would likely win its bid for the Santa Maria jobs when it hired the Local 381 truckers, and that it closed the facility as a result of the Local 63 arbitration award. Vons claimed the closure was a business management decision and that nothing under the collective bargaining agreement with Local 381 required them to keep the Santa Maria facility open. Vons also argued that the decision to close the facility was based on economic considerations other than the Local 63 arbitration award.

On the issue of closure, Vons offered the testimony of vice-president Warren Cox. Cox testified that he decided to close the Santa Maria facility after an economic study was conducted by one of his subordinates. The study showed that this move would save Vons approximately $800,000 annually. Cox testified that he did not know the final amount of the award against Vons in the Local 63 arbitration when he made the decision to close the Santa Maria facility, and that liability for the award was not a consideration.

The union presented the testimony of Ken Christiansen, a dispatcher at the Santa Maria facility, suggesting that the Santa Maria operation was profitable.

The arbitrator in the Local 381 arbitration ruled in favor of Vons, concluding that the company had not violated the collective bargaining agreement or breached any duty of good faith and fair dealing inherent in the contract. He issued a detailed written decision, which included the following findings and analysis: "In addressing the closure, the first consideration will

be the reason or reasons testified to by management. Cox was precise that the reason for closing the Santa Maria facility was economic. The specter of the [Local 63 decision] was not the reason, though it had a direct financial and operational impact on Vons and its transportation system. [¶] The question is whether Vons established . . . economic grounds to effect the closure, assuming . . . this was a necessary requirement. . . . [¶] . . . [T]he arbitrator found Cox's testimony as to his reasoning regarding economic factors . . . to be persuasive. . . . [¶] Therefore, economic considerations were the driving force behind the closure—these were 'legitimate' reasons!"

### EMPLOYEE LAWSUIT FOR FRAUD AND MISREPRESENTATION

Appellants are truck drivers who worked for Vons at the Santa Maria facility and who were laid off as a result of its closure. Shortly before the award issued in the Local 381 arbitration, they filed the instant suit against Vons in superior court, alleging causes of action for fraud and negligent misrepresentation. Appellants' amended complaint alleged that when they were hired, Vons failed to notify them of the pending labor dispute with Local 63. This was a concealment of material facts which caused them to leave secure employment and turn down other job opportunities.

Vons filed a motion for summary judgment, alleging that appellants were collaterally estopped from seeking damages for misrepresentations about the Local 63 labor dispute. Vons argued that the award in the Local 381 arbitration necessarily determined that Vons had closed the Santa Maria plant for economic reasons not related to the labor dispute with Local 63. Because the plant closure was not caused by the Local 63 labor dispute, Vons's alleged misrepresentations about that dispute could not have caused appellants' damages. The trial court granted summary judgment, accepting Vons's theory that the arbitrator's finding of "economic reasons" in the Local 381 arbitration barred their claims.

This appeal follows.

### DISCUSSION

### I.

### *Standard of Review*

A defendant is entitled to summary judgment when the record establishes that none of the plaintiff's causes of action can prevail as a

matter of law. (*Flatt* v. *Superior Court* (1994) 9 Cal.4th 275, 279 [36 Cal.Rptr.2d 537, 885 P.2d 950].) Summary judgment is an appropriate remedy when the doctrine of collateral estoppel refutes all triable issues of fact suggested by the pleadings and supporting documents. (*County of Alameda* v. *Sampson* (1980) 104 Cal.App.3d 584, 589-590 [163 Cal.Rptr. 915].) We review the trial court's decision de novo. (*Rosse* v. *DeSoto Cab Co.* (1995) 34 Cal.App.4th 1047, 1050 [40 Cal.Rptr.2d 680].)

II.

*The Doctrine of Collateral Estoppel Applied to the Factual Findings Made in the Local 381 Arbitration*

■ The trial court granted summary judgment in favor of Vons after giving conclusive effect to factual findings made in the Local 381 arbitration. Appellants argue that collateral estoppel does not apply to findings made during a labor arbitration under a collective bargaining agreement. We agree with Vons that collateral estoppel does apply to such findings, so long as the customary elements required for the application of that doctrine are met. We also agree that the elements of collateral estoppel were met in this case and supported the order granting summary judgment.

A. *Collateral Estoppel Applies to Labor Arbitration Findings*

■ Res judicata prohibits the relitigation of claims and issues which have already been adjudicated in an earlier proceeding. The doctrine has two components. " 'In its primary aspect the doctrine of res judicata [or "claim preclusion"] operates as a bar to the maintenance of a second suit between the same parties on the same cause of action.' . . . The secondary aspect is 'collateral estoppel' or 'issue preclusion,' which does not bar a second action but 'precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding.' " (*People* v. *Damon* (1996) 51 Cal.App.4th 958, 968 [59 Cal.Rptr.2d 504]; see also *Branson* v. *Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 339-340 [29 Cal.Rptr.2d 314]; Rest.2d Judgments, §§ 18-19, 27.)

■ Most applications of res judicata involve prior judicial decisions, but several cases recognize that claims preclusion applies to arbitration awards as well. (See, e.g., *Lyons* v. *Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1015-1016 [48 Cal.Rptr.2d 174]; *Thibodeau* v. *Crum* (1992) 4 Cal.App.4th 749, 755 [6 Cal.Rptr.2d 27]; *Lehto* v. *Underground Constr. Co.* (1977) 69 Cal.App.3d 933, 939 [138 Cal.Rptr. 419]; see also 7 Witkin Cal. Procedure (4th ed. 1997) Judgment, § 293, p. 838.) Other cases

have concluded that findings made during arbitrations may be given collateral estoppel effect in a subsequent lawsuit. (See, e.g., *Gordon* v. *G.R.O.U.P., Inc.* (1996) 49 Cal.App.4th 998, 1010 [56 Cal.Rptr.2d 914] [uninsured motorist arbitration]; *Sartor* v. *Superior Court* (1982) 136 Cal.App.3d 322, 327-328 [187 Cal.Rptr. 247] [commercial arbitration].)

■ At least one California court has specifically held that a labor arbitration award under a collective bargaining agreement precludes the relitigation of identical issues in a subsequent civil lawsuit. (*Conner* v. *Dart Transportation Service* (1976) 65 Cal.App.3d 320, 323-324 [135 Cal.Rptr. 259].) Courts in other states have reached the same result. (See *Taylor* v. *Peoples Gas Light & Coke Co.* (1995) 275 Ill.App.3d 655 [211 Ill.Dec. 942, 656 N.E.2d 134]; *Bulger* v. *Lieberman* (1995) 39 Conn.App. 772 [667 A.2d 561].)

The reasons for giving preclusive effect to arbitration findings is sound. "Arbitration is a voluntary procedure for settling disputes, leading to a final determination of the rights of the parties. The policy of the law is to favor arbitration, and every reasonable intendment is indulged to give effect to such proceedings. [Citation.] Once a valid award is made by the arbitrator, it is conclusive on matters of fact and law and all matters in the award are thereafter res judicata." (*Lehto* v. *Underground Constr. Co., supra,* 69 Cal.App.3d at p. 939; accord, Rest.2d Judgments, § 84, subd. (1); *Trollope* v. *Jeffries* (1976) 55 Cal.App.3d 816, 823-824 [128 Cal.Rptr. 115].) A contrary rule would defeat the expectations of the parties to a private arbitration. " 'Even in the absence of an explicit agreement, conclusiveness is expected; the essence of the arbitration process is that an arbitral award shall put the dispute to rest.' [Citation.]" (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 10 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

■ It is also appropriate to give collateral estoppel effect to findings made during an arbitration, so long as the arbitration had the elements of an adjudicatory procedure. (See Rest.2d Judgments, § 84, subd. (3)(b).) Findings made during an administrative hearing may collaterally estop a party from relitigating issues in a later action when the hearing possessed a "judicial character." (*People* v. *Sims* (1982) 32 Cal.3d 468, 479 [186 Cal.Rptr. 77, 651 P.2d 321].) Parties to an arbitration, like parties to administrative hearings, are often afforded the opportunity for a hearing before an impartial and qualified officer, at which they may give formal recorded testimony under oath, cross-examine and compel the testimony of witnesses, and obtain a written statement of decision. When an arbitration has these

attributes, it is not unjust to bind the parties to determinations made during the proceeding.[1]

■ Appellants urge us to apply a different rule to labor arbitrations. They cite a series of United States Supreme Court cases holding that findings made during a labor arbitration are not binding in an employee lawsuit asserting federal statutory causes of action. (*Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36 [94 S.Ct. 1011, 39 L.Ed.2d 147] [action under title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging racially motivated firing]; *Barrentine* v. *Arkansas-Best Freight System, Inc.* (1981) 450 U.S. 728 [101 S.Ct. 1437, 67 L.Ed.2d 641] [action alleging minimum wage violation under Fair Labor Standards Act (FSLA), 29 U.S.C. § 201 et seq.]; *McDonald* v. *West Branch* (1984) 466 U.S. 284 [104 S.Ct. 1799, 80 L.Ed.2d 302] [action under Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that plaintiff was fired for exercising First Amendment rights].)

In each case, the employee filed a lawsuit alleging a federal statutory cause of action after issues germane to the claim had been litigated and decided during a labor arbitration. The Supreme Court's failure to apply res judicata or collateral estoppel was "based in large part on [the] conclusion that Congress intended the statutes at issue in those cases to be judicially enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under those statutes." (*McDonald* v. *West Branch, supra,* 466 U.S. at p. 289 [104 S.Ct. at p. 1802]; see also *Brosterhous* v. *State Bar* (1995) 12 Cal.4th 315, 337-342 [48 Cal.Rptr.2d 87, 906 P.2d 1242].) The court was also concerned that the interests of the union and the employee might not always coincide, and that an arbitrator is bound to enforce the collective bargaining agreement even when it conflicts with other laws. (See *McDonald, supra,* at pp. 290-291 [104 S.Ct. at pp. 1803-1804].)[2]

■ These cases construe federal law and procedure and are not binding in our interpretation of state law. (See *People* v. *Guiton* (1993) 4 Cal.4th 1116, 1126 [17 Cal.Rptr.2d 365, 847 P.2d 45].) ■ Granting that the decisions are nonetheless entitled to " 'respectful consideration' " (see *ibid.*),

[1]Contrast *Flynn* v. *Gorton* (1989) 207 Cal.App.3d 1550 [255 Cal.Rptr. 768], in which the court held that findings during a judicial arbitration under Code of Civil Procedure section 1141.10 et seq. could not be given collateral estoppel effect in a subsequent lawsuit. This conclusion was based on the informality of the proceedings, the low amount in controversy, and other matters which are not relevant to the labor arbitration in this case.

[2]Another factor, that arbitrators are generally not suited to resolving federal statutory claims, was later disavowed in *Gilmer* v. *Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 34, fn. 5 [111 S.Ct. 1647, 1656, 114 L.Ed.2d 26].)

we do not read them to mean that findings by a labor arbitrator should never be binding in a subsequent lawsuit.

First, the federal statutes provide "minimum substantive guarantees to individual workers," and contemplate that aggrieved employees shall have access to the courts. (*Barrentine* v. *Arkansas-Best Freight System, Inc., supra,* 450 U.S. at pp. 737-738 [101 S.Ct. at p. 1443].) There is no similar legislative dictate against resolving common law claims by arbitration. (Cf. *Torrez* v. *Consolidated Freightways Corp.* (1997) 58 Cal.App.4th 1247, 1250 [68 Cal.Rptr.2d 792] [collective bargaining agreement requiring arbitration of all employment-related claims not binding as to statutory claims under the Fair Employment and Housing Act, but arbitrating common law causes of action was proper]; *Ivery* v. *United States* (6th Cir. 1982) 686 F.2d 410 [labor arbitration findings given collateral estoppel effect in suit under federal Tort Claims Act].)

■ Second, findings made during a labor arbitration will only be binding in a subsequent employee lawsuit if the employee was a party to the arbitration or in privity with the union during that proceeding. Privity requires an identity of interests, or a relationship which is sufficiently close to justify application of the doctrine. (*Citizens for Open Access etc. Tide, Inc.* v. *Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1070 [71 Cal.Rptr.2d 77].) A person who is in privity with a party to a former proceeding is bound by that proceeding only when his or her interests were adequately represented. (*Trujillo* v. *County of Santa Clara* (9th Cir. 1985) 775 F.2d 1359, 1367.) When an employee does not participate directly in a labor arbitration and the union's position was contrary to his or her interests, that employee can successfully assert a lack of privity or fair representation as a bar to collateral estoppel. ■ Appellants do not allege in this appeal that they lacked privity with the union in the Local 381 arbitration, and it appears that their interests were adequately represented.

Finally, we perceive little tension between the general body of common law and an arbitrator's duty to interpret a collective bargaining agreement. Statutory schemes such as title VII or FSLA are specifically concerned with fair employment practices and contain many provisions which might conflict with terms negotiated by a union. In contrast, a collective bargaining agreement is unlikely to condone fraud, negligent misrepresentation or other common law torts by the employer. It is unlikely that an arbitrator charged with interpreting a collective bargaining agreement will be required to enforce its terms in a manner that conflicts with the common law.

The concerns underlying the Supreme Court's decisions in *Alexander*, *Barrentine* and *McDonald* do not apply when labor arbitration findings are

given preclusive effect in state common law actions. There is no policy reason to forbid collateral estoppel in such cases, so long as the basic criteria for applying that doctrine are met and the arbitration was judicial in character. (Cf. *Victa* v. *Merle Norman Cosmetics, Inc.* (1993) 19 Cal.App.4th 454, 468 [24 Cal.Rptr.2d 117] [EEOC (Equal Employment Opportunity Commission) case is not res judicata on employment discrimination claim due to facts of particular proceeding, but decision is not "a general disavowal of the EEOC's capacity to stand in privity" with claimant]; *King* v. *Internat. Union etc. Engineers* (1952) 114 Cal.App.2d 159, 164 [250 P.2d 11] [lawsuit filed by certain union members challenging by-laws was binding on other union members: " 'It is also settled that when a party acts in a representative capacity, and as such is lawfully authorized to litigate the questions at issue for those whom he represents, they as well as he are bound by the judgment.' "].)

The Local 381 arbitration was judicial in character. (Cf. *People* v. *Sims, supra,* 32 Cal.3d 468, 479-480.) The union was permitted to call and cross-examine witnesses, present oral argument, and subpoena documents. The arbitrator issued a written decision carefully explaining the reasons for his ruling. Although there was no right to judicial review of the factual and legal findings, the union could have petitioned to vacate or correct the arbitration award under Code of Civil Procedure sections 1286.2 and 1286.6. (See *Foreman Roofing, Inc.* v. *United Union of Roofers etc. Workers* (1983) 144 Cal.App.3d 99, 105-106 [192 Cal.Rptr. 439].) The arbitrator's decision was a proper subject for collateral estoppel.

B. *Collateral Estoppel Was Properly Applied to Appellants' State Tort Claims*

Appellants claim that even if collateral estoppel applies to labor arbitration findings in general, it was improperly utilized in this case because two of the requisite five elements were missing.

██ A prior determination by a tribunal will be given collateral estoppel effect when (1) the issue is identical to that decided in a former proceeding; (2) the issue was actually litigated and (3) necessarily decided; (4) the doctrine is asserted against a party to the former action or one who was in privity with such a party; and (5) the former decision is final and was made on the merits. (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 341, fn. 3 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995]; *Branson* v. *Sun-Diamond Growers, supra,* 24 Cal.App.4th at p. 346.) ██ Appellants claim the finding that Vons had closed the Santa Maria facility for economic reasons was neither "actually litigated" nor "necessarily decided" during the arbitration.

We disagree. Local 381's position at the arbitration hearing was that Vons had violated the collective bargaining agreement by closing the Santa Maria facility. It argued that Vons was prevented from closing the facility due to its letter of assent assuming the responsibilities of Williams Brothers towards Local 381, and the "Recognition Clause" of the collective bargaining agreement. Local 381 also argued that Vons had breached an implied covenant of good faith and fair dealing inherent in the collective bargaining agreement, and indicated during its opening statement that the "whole case turned on" whether the closure was related to the Local 63 arbitration or was due to independent economic reasons. Vons claimed the closure was a management decision which Vons could make for any reason.

The "economic reasons" issue was part and parcel of the union's argument that Vons had acted in bad faith and had violated the terms of the contract. The Local 381 representative extensively cross-examined Vons's officers and employees about the reasons behind the plant closure and called their own witnesses to rebut testimony that the facility had been unprofitable.

In his written decision, the arbitrator concluded: "Notwithstanding the Union's arguments and testimony which challenged the economic grounds for the closure of the Santa Maria facility, the Arbitrator found [Vons vice-president] Cox's testimony as to his reasoning regarding the economic factors associated with this operation to be persuasive. Though certain aspects of the local operation of the Santa Maria facility reasonably appeared to demonstrate a solid and efficient operation, from the macro view which [Cox] used in making his ultimate decision, economics did appear to dictate the closure of the Santa Maria facility. [¶] Therefore, economic considerations were the driving force behind the closure—these were 'legitimate' reasons[.]" The issue of economic reasons was raised by the parties, submitted for decision and determined by the arbitrator. It was thus actually litigated. (*Barker* v. *Hull* (1987) 191 Cal.App.3d 221, 226 [236 Cal.Rptr. 285], citing Rest.2d Judgments, § 27, com. d, p. 255.)

Appellants argue that the arbitrator restricted Local 381's ability to fully litigate the issue by advising the union representative that his cross-examination of a company witness was "trying to go into the decision [to close the facility] itself and not to the motivation [behind] it." We disagree. First, we construe the arbitrator's remark to mean that the union representative was spending too much time on questions relating to whether the company had been correct in its economic assessment of the Santa Maria facility, rather than the company's motivation for the closure. Because the issue was the company's good faith, the former line of inquiry was of marginal relevance. Second, the arbitrator did not instruct the union representative to stop his

cross-examination; he simply advised him the questions were going too far afield. Finally, the Local 381 representative stopped questioning the witness without making an offer of proof as to why additional testimony was necessary.

Appellants finally claim the finding of economic reasons was unnecessary to the decision. They acknowledge the finding of economic reasons was relevant to whether the company had breached an implied covenant of good faith and fair dealing, but argue that the good faith issue became moot because the arbitrator found there was no such implied covenant. We do not agree with this interpretation of the arbitration decision.

The written decision specifically states the covenant of good faith and fair dealing was not violated, assuming it applied. It also states there was no "implied contractual prohibition" preventing Vons from closing the plant. We understand this second statement to mean that Vons had no implied contractual obligation to continue operations in Santa Maria, not that it had no implied obligation to deal in good faith under the collective bargaining agreement. The arbitrator's finding of economic reasons was essential to completely resolve the union's claims, which included an allegation that Vons had acted in bad faith.

The trial court correctly determined that Vons had negated the element of damages as a matter of law. (See *Kruse* v. *Bank of America* (1988) 202 Cal.App.3d 38, 60 [248 Cal.Rptr. 217] [no liability for fraud when damages due to unrelated causes].) The summary judgment was proper.

Our resolution of these issues makes it unnecessary to address appellants' remaining claims.

The judgment is affirmed. Costs are awarded to respondent.

Gilbert, Acting P. J., and Yegan, J., concurred.