Mike JACOBS, Jr.; William Webb, individuals; Westwind Releasing Corp., a California Corporation, Plaintiffs–Appellants,

and

Michael Givens, Plaintiff,

v.

CBS BROADCASTING INC., Defendant–Appellee.

No. 01–55478.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 2002.

Filed June 3, 2002.

**1174**

Brian A. Rishwain, Johnson & Rishwain LLP, Los Angeles, CA, for the plaintiffs-appellants.

George R. Hedges, Quinn Emanuel Urquhart Oliver & Hedges, LLP, Los Angeles, CA, for the defendant-appellee.

Before REINHARDT and GRABER, Circuit Judges, and HUNT,* District Judge.

* The Honorable Roger L. Hunt, United States District Court for the District of Nevada, sitting by designation.

## OPINION

GRABER, Circuit Judge.

Plaintiffs Mike Jacobs, Jr., William Webb, and Westwind Releasing Corporation filed this action against Defendant CBS Broadcasting, Inc., alleging that CBS had breached a contract to give Plaintiffs production credit when it produced a television series called *Early Edition*. The district court granted summary judgment to CBS on the ground that an earlier nonjudicial proceeding precluded Plaintiffs from bringing their claim to court. We reverse because that nonjudicial proceeding was too informal to have preclusive effect.

## FACTUAL AND PROCEDURAL BACKGROUND

Michael Givens is a script writer and a member of the Writers' Guild of America (WGA). Givens wrote a script titled *The Fourth Estate a/k/a/ Final Edition* (*Final Edition*). Westwind optioned *Final Edition* for the purpose of securing a television broadcast commitment from a network. Under the agreement between Givens and Westwind, any writing credit to be accorded Givens was to be determined pursuant to the WGA's Minimum Basic Agreement (MBA) credit-determination procedures. Givens was entitled to additional compensation under the contract only if the WGA awarded him a "written by" or "screenplay by" credit.

CBS later agreed with Westwind to acquire the broadcast rights to *Final Edition* (First Agreement). In a second contract, CBS bought all rights to *Final Edition* from Westwind *and* Givens (Second Agreement). The Second Agreement provided that, "*[i]f a project is produced based upon the literary property,* CBS agrees ... to provide credit to William Webb and Mike Jacobs, Jr. as Co Executive Producers (or Executive Producers at CBS' election) on a shared card." (Emphasis added.) The Second Agreement also incorporated the provision in the original contract between Givens and Westwind stating that any writing credit for Givens would be governed by the WGA's credit-determination procedures. ˙

CBS eventually participated in the production of a series called *Early Edition*, which shared a common premise with Givens' *Final Edition* script.[1] However, when the Notice of Tentative Writing Credits for *Early Edition* was issued, Givens was not listed as a "participating writer" who was entitled to receive credit. Givens complained to the WGA, citing those provisions of the MBA setting forth the circumstances under which WGA members such as Givens are entitled to writing credit. The WGA responded by suspending the credits process and informing Columbia Tristar, one of the producers of *Early Edition*, that if *Early Edition* aired with credits different from those that the WGA ultimately found to be proper, the WGA would pursue damages on behalf of the WGA-credited writers.

The WGA undertook an investigation and concluded that Givens was not a "participating writer" of *Early Edition*. Givens sought review of the participating-writer decision but, after engaging in additional investigation, the WGA reaffirmed its conclusion that Givens was not entitled to writing credit. After this second determination, Givens asked the WGA to reconsider its decision. The WGA again decided that Givens was not entitled to credit. In a letter to Givens, the WGA noted that its determination that Givens was not a participating writer precluded it from rep-

---

**1.** In *Early Edition* and *Final Edition,* a man is able to predict the future when he comes into possession of the next day's newspaper, and he attempts to alter events that are yet to occur.

resenting him in any subsequent writing-credit arbitration against CBS.

While Givens was pursuing his WGA appeals, Givens, Jacobs, Webb, and Westwind filed this action in Los Angeles County Superior Court. They argued that the *Early Edition* project was "based upon" the literary property *Final Edition* and that, accordingly, CBS had breached its contract by not providing them with writing and production credit. CBS removed the action to federal court. Next, CBS filed a Notice of Initiation of Arbitration, which sought a decision pursuant to the WGA's arbitration procedure on two questions: (1) whether Givens had a right to enforce the contractual provisions of the Second Agreement with respect to *Early Edition* independently of the processes and standards for determining writing credit set forth in the MBA, and (2) whether Givens had a right to pursue a writing-credit claim in a judicial forum. The district court stayed proceedings in federal court pending the outcome of the arbitration.

The WGA arbitrator ruled in favor of CBS. The arbitrator held that allowing Givens to litigate his claims would undermine the finality of the MBA's "fast, fair, and effective system for determining credit." Givens stipulated to an order confirming the arbitration award. Accordingly, Givens is not a party to this appeal.

 · CBS then filed a motion for summary judgment against the remaining Plaintiffs, who seek production credit regardless of who actually wrote the *Early Edition* scripts. Arguing that Plaintiffs'

claims for production credit were entirely derivative of Givens' claim for writing credit, CBS asserted that the formal WGA arbitration had a preclusive effect on Plaintiffs' federal action. The district court rejected that argument, but nonetheless granted summary judgment on the alternate ground that the earlier WGA participating-writer determination involving Givens had a nonmutual collateral estoppel effect[2] on Plaintiffs' action. Plaintiffs filed a timely notice of appeal.

## STANDARD OF REVIEW

 We review de novo the district court's grant of summary judgment. *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1021 (9th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 816, 151 L.Ed.2d 700 (2002). We also review de novo the district court's determination that a prior decision has preclusive effect. *Bates v. Union Oil Co.*, 944 F.2d 647, 649 (9th Cir. 1991).

## DISCUSSION

### A. *California Law on Collateral Estoppel (Issue Preclusion) Applies.*

CBS argues that the WGA's determination that Givens was not a participating writer precludes Plaintiffs from litigating whether *Early Edition* is "based upon" *Final Edition*. To prevail, CBS must establish that the WGA participating-writer proceeding satisfies the requirements for application of collateral estoppel. *Lucido v. Superior Court*, 51 Cal.3d 335, 272 Cal. Rptr. 767, 795 P.2d 1223, 1225 (1990) ("The

---

**2.** Under the doctrine of nonmutual collateral estoppel, it is not necessary that the earlier and later proceedings involve the same parties or their privies. To the contrary, a nonparty to the earlier proceeding may invoke the doctrine *against* a party who *is* bound by the proceeding. *Vandenberg v. Superior Court*, 21 Cal.4th 815, 88 Cal.Rptr.2d 366,

982 P.2d 229, 237 (1999). The district court in this case applied the doctrine of nonmutual collateral estoppel, holding that, because Plaintiffs were in privity with Givens, CBS could invoke the WGA participating-writer determination against them even though CBS had not been a party to that proceeding.

party asserting collateral estoppel bears the burden of establishing these requirements" under California law.); *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir.2000) (same under federal law).

■ Because this is a diversity action, state law controls whether the WGA participating-writer determination has a preclusive effect on Plaintiffs' claims for production credit. *See Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994) ("Because this is a diversity case, we apply the collateral estoppel rules of the forum state. . . ."); *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir.1982) (holding that "a federal court sitting in diversity must apply the res judicata law of the state in which it sits"); *Priest v. Am. Smelting & Ref. Co.*, 409 F.2d 1229, 1231 (9th Cir.1969) ("Since federal jurisdiction in this case is based upon diversity of citizenship, the district court and this court must apply the substantive law of the forum state, . . . includ[ing] the law pertaining to collateral estoppel."); *see also BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir.1997) ("The governing law in this diversity case is that of New York, where the district court sits: specifically, New York's law on the collateral estoppel effect of an arbitration award.").

■ Despite those precedents, CBS argues that federal law should govern the issue preclusion analysis in this case. CBS bases its argument on the fact that the district court confirmed the result of the second, more formal arbitration. Because the second arbitration award was confirmed, CBS reasons, that award must be construed as if it were a federal judgment. Under California law, the preclusive effect of a prior *federal* judgment is a

matter governed by federal law. *Younger v. Jensen*, 26 Cal.3d 397, 161 Cal.Rptr. 905, 605 P.2d 813, 822 (1980) ("A federal judgment has the same effect in the courts of this state as it would have in a federal court." (citation and internal quotation marks omitted)).

CBS's theory has no application, however, because the potentially preclusive effect of the second arbitration is not at issue in this appeal. The district court held that the WGA's earlier participating-writer determination, which was *not* confirmed, precludes the present action, and it is that holding that CBS seeks to defend. Further, the second arbitration cannot have a preclusive effect on Plaintiffs' claims for production credit, because the arbitrator did not address whether the *Early Edition* project was "based upon" the literary property *Final Edition.*[3] Thus, we need not decide whether federal law would determine the preclusive effect of the second arbitration. Only the WGA's initial participating-writer determination is at issue. Accordingly, we look to California law for the governing principles.

B. *The WGA Participating—Writer Proceeding Is Not Entitled to Preclusive Effect.*

■■ Under California law, CBS must demonstrate that the WGA participating-writer determination was adjudicatory in nature before that determination can have collateral estoppel effect. *See Vandenberg v. Superior Court*, 21 Cal.4th 815, 88 Cal. Rptr.2d 366, 982 P.2d 229, 237 (1999) (stating criterion). Additionally, CBS must show that: (1) the issue decided in the WGA proceeding is identical to that presented in Plaintiffs' action; (2) the issue

---

**3.** The arbitrator in the second arbitration stated: "The purpose of this arbitration is to determine whether Givens can pursue his claims for writing credit and associated com-

pensation in litigation, or whether these claims are subject to arbitration in accordance with the MBA."

was actually litigated in the WGA proceeding; (3) the issue was necessarily decided in the WGA proceeding; (4) there was a final judgment on the merits in the WGA proceeding; and (5) Plaintiffs were a party or in privity with a party to the WGA proceeding. *Lucido*, 272 Cal.Rptr. 767, 795 P.2d at 1225. Plaintiffs argue that the first of these factors is dispositive and that the district court erred in giving the WGA participating-writer determination preclusive effect because that determination lacked the procedural safeguards that California courts require. We agree.[4]

■ In order to have an issue-preclusive effect in a later judicial action in California, an arbitration must have been conducted with certain procedural safeguards. As the California Supreme Court recently explained:

> Whether collateral estoppel is fair and consistent with public policy in a particular case depends in part upon the character of the forum that first decided the issue later sought to be foreclosed. In this regard, courts consider the judicial nature of the prior forum, i.e., its legal formality, the scope of its jurisdiction, and its procedural safeguards, particularly including the opportunity for judicial review of adverse rulings.

*Vandenberg*, 88 Cal.Rptr.2d 366, 982 P.2d at 237. The California Courts of Appeal have similarly noted that it is "appropriate to give collateral estoppel effect to findings made during an arbitration, *so long as the arbitration had the elements of an adjudicatory procedure.*" *Kelly v. Vons Cos.*, 67 Cal.App.4th 1329, 79 Cal.Rptr.2d 763, 767 (1998) (emphasis added); *see also Camargo v. Cal. Portland Cement Co.*, 86 Cal. App.4th 995, 103 Cal.Rptr.2d 841, 853 (2001) ("[C]ollateral estoppel is appropriately applied to arbitration as a matter of policy where the arbitration had the elements of *an adjudicatory procedure.*" (emphasis added)). The need for procedural safeguards and legal formality is especially acute in the circumstances of this case because "collateral estoppel is invoked by a nonparty to the prior litigation. Such cases require close examination to determine whether nonmutual use of the doctrine is fair and appropriate." *Vandenberg*, 88 Cal.Rptr.2d 366, 982 P.2d at 237 (citations omitted);[5] *see also Benasra v. Mitchell Silberberg & Knupp*, 96 Cal. App.4th 96, 116 Cal.Rptr.2d 644, 652 (2002) (same).

■ When deciding whether an arbitration was sufficiently adjudicatory in nature, courts apply the same standards used to determine whether an administrative proceeding should have collateral estoppel effect. *See* Restatement (Second) of Judgments, §§ 83(2), 84(3)(b) (1980); *Kelly*, 79 Cal.Rptr.2d at 767; *see also Vandenberg*, 88 Cal.Rptr.2d 366, 982 P.2d at 237 (relying on cases discussing the collateral estoppel effect of administrative proceed-

---

**4.** We reject CBS's argument that Plaintiffs conceded this point at the hearing on summary judgment.

**5.** In *Vandenberg*, the California Supreme Court held that "a private arbitration award, even if judicially confirmed, may not have nonmutual collateral estoppel effect under California law unless there was an agreement to that effect in the particular case." 88 Cal.Rptr.2d 366, 982 P.2d at 234. Because CBS was not a party to the participating-writer determination and because Plain-

tiffs did not agree that the proceeding would have nonmutual collateral estoppel effect, *Vandenberg* might appear to decide the issue in this case. Unfortunately for Plaintiffs, however, the supreme court expressly limited its holding to exclude "arbitrations conducted pursuant to collective bargaining agreements within the purview of federal or state labor relations laws." *Id.* at 234 n. 2. Givens was a member of the WGA, and the participating-writer proceeding was conducted pursuant to a collective bargaining agreement.

ings). Accordingly, courts must examine such factors as whether

> (1) the [arbitration] was conducted in a judicial-like adversary proceeding; (2) the proceedings required witnesses to testify under oath; (3) the [arbitral] determination involved the adjudicatory application of rules to a single set of facts; (4) the proceedings were conducted before an impartial hearing officer; (5) the parties had the right to subpoena witnesses and present documentary evidence; and (6) the [arbitrator] maintained a verbatim record of the proceedings. Additional factors include whether the hearing officer's decision was adjudicatory and in writing with a statement of reasons. Finally, [whether ] that reasoned decision [was] adopted by the director of the agency with the potential for later judicial review.

*Imen v. Glassford*, 201 Cal.App.3d 898, 247 Cal.Rptr. 514, 518 (1988) (citing *People v. Sims*, 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321, 328–29 (1982)); *see also Kelly*, 79 Cal.Rptr.2d at 767 (explaining that an arbitration should provide parties "the opportunity for a hearing before an impartial and qualified officer, at which they may give formal recorded testimony under oath, cross-examine and compel the testimony of witnesses, and obtain a written statement of decision"); *cf. Plaine v. McCabe*, 797 F.2d 713, 720 (9th Cir.1986) (giving an administrative proceeding collateral estoppel effect because "[t]he fairness hearing was conducted similarly to a court proceeding. It was an adversary proceeding in which opposing parties were present and represented by counsel and were allowed to call, examine, cross-examine, and subpoena witnesses.... [T]estimony was to be submitted under oath or affirmation and a verbatim transcript was required.").

The WGA participating-writer determination did not provide the requisite procedural safeguards to give it issue-preclusive effect in California. The determination was made after an informal "investigation" into Givens' claims. The WGA did not take formal testimony from interested parties but, instead, engaged in "discussions" with Givens, his agent, CBS, and Columbia Tristar. Givens had no opportunity to cross-examine witnesses. Neither did Jacobs or Webb. Further, none of them had a right to examine the evidence presented by CBS and others. Givens and CBS simply provided the WGA with relevant information about the development of each project, and the WGA arrived at its conclusions through an examination of those materials. Finally, the WGA's participating-writer determination was subject to only very limited judicial review.

Thus, although undoubtedly conducted with care and in good faith, the WGA participating-writer proceeding was insufficiently formal and provided too few procedural safeguards to constitute an adjudicatory proceeding. Because the remaining Plaintiffs did not agree to litigate their entitlement to production credit in an informal arbitral forum,[6] under California law the WGA's decision on writing credit does not preclude the litigation of Plaintiffs' claims in a judicial proceeding.

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

**6.** Although Givens *did* agree to arbitrate his entitlement to writing credit, he is no longer a plaintiff in this action.