Filed 1/8/21 Benson v. Enloe Medical Center CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| DOUGLAS BENSON, | C089054 |
| Plaintiff and Appellant, | (Super. Ct. No. 18CV00311) |
| v. | |
| ENLOE MEDICAL CENTER, | |
| Defendant and Respondent. | |

Douglas Benson, M.D., challenges the trial court's dismissal of his action against Enloe Medical Center (EMC). In this action, Benson claims that EMC violated the Labor Code and engaged in unfair business practices by not paying him the employee wages to which he was entitled. The trial court determined that Benson's claims are barred by collateral estoppel because a prior arbitration conclusively resolved the issue of whether he was an employee of EMC against him.

1

On appeal, Benson contends (1) the issues in the prior action differed from those in this action, (2) his status as an employee of EMC was not actually litigated and decided in the arbitration, and (3) public policy considerations do not support the application of collateral estoppel in this case.

We conclude the prior and present actions encompass the identical issue of whether Benson was an employee of EMC. This issue was actually litigated and decided in the prior action. And, public policy discourages relitigation of identical issues in multiple actions. Accordingly, we affirm the order dismissing this action.

## FACTUAL AND PROCEDURAL HISTORY

### *The Prior Action – 2015 Complaint and Arbitration*

In August 2015, Benson filed a complaint against EMC in Butte County Superior Court for breach of contract, age discrimination under the California Fair Employment and Housing Act (Gov. Code, § 12940, subd. (a))[1] (FEHA), age discrimination under the

---

[1] At the time Benson filed his 2015 complaint, Government Code section 12940 provided in pertinent part:

"It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

"(a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

"(1) This part does not prohibit an employer from refusing to hire or discharging an *employee* with a physical or mental disability, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee with a physical or mental disability, where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his

2

Age Discrimination in Employment Act (29 U.S.C. § 623) (ADEA), and harassment under FEHA (Gov. Code, § 12940, subd. (j)(1)).  The complaint acknowledged that Benson entered into a physician on-call agreement and a medical director agreement (together, the agreements) with EMC for which he was "labelled an independent contractor."  However, the complaint alleged that, "despite the fact that EMC chose to label the relationship as an independent contractor relationship, [Benson] was an

or her health or safety or the health or safety of others even with reasonable accommodations.

"(2) This part does not prohibit an employer from refusing to hire or discharging an *employee* who, because of the employee's medical condition, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger the employee's health or safety or the health or safety of others even with reasonable accommodations.  Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her essential duties, or cannot perform those duties in a manner that would not endanger the employee's health or safety or the health or safety of others even with reasonable accommodation.  [¶] . . . [¶]

"(j)(1) For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status, to harass an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract.  Harassment of an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.  An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees, applicants, unpaid interns or volunteers, or persons providing services pursuant to a contract in the workplace, where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility that the employer may have with respect to the conduct of those nonemployees shall be considered.  An entity shall take all reasonable steps to prevent harassment from occurring.  Loss of tangible job benefits shall not be necessary in order to establish harassment."  (Italics added.)

3

'employee' of EMC such that the FEHA prohibition on age discrimination applies in this case." For the ADEA cause of action, the complaint alleged that EMC's actions "adversely affected his status as an employee, because of Dr. Benson's age." The cause of action for harassment reiterated these factual allegations.

EMC removed the action to the United States District Court for the Eastern District of California under federal question jurisdiction based on Benson's ADEA claim. The district court exercised supplemental jurisdiction over the remaining state law claims. In the district court, EMC moved to compel arbitration under the agreements. Benson did not oppose the motion to compel, and the district court granted EMC's motion.

In March 2016, Benson and EMC entered into a "stipulation for arbitration and selection of arbitrator" in which the parties agreed "to submit all disputes, claims or controversies to neutral, binding arbitration" to be conducted by the Honorable Richard A. Kramer (ret.). A motion for summary judgment resulted in the dismissal of the ADEA claim against EMC. In resolving the motion for summary judgment, the arbitrator rejected EMC's argument that Benson's FEHA age discrimination claim was barred as a matter of law. The arbitrator found that "[b]oth sides . . . presented evidence that created fact questions as to whether Dr. Benson provided both medical care and non-medical care services for [EMC]." Although Benson established triable issues of material fact as to his FEHA claim, the arbitrator dismissed his ADEA claim on grounds that Benson had not shown that "the discriminatory behavior was the reason for the adverse employment action."

A four-day evidentiary hearing was then conducted by the arbitrator. Both parties introduced evidence during the hearing. Benson testified on his own behalf. Immediately after Benson rested his case, EMC moved for judgment as a matter of law on the FEHA age discrimination claim. EMC argued that Benson had not proven an employer/employee relationship. Benson, through counsel, submitted on the issue

4

without offering argument in opposition. The arbitrator granted EMC's motion, with the following explanation on the record:

"THE ARBITRATOR: Motion is granted.

"Regarding employee, I handled this in the motion for summary disposition, and my ruling in the motion for summary disposition was, I thought, a clear clue as to what I was concerned about.

"I said that to the extent that Dr. Benson performs doctor work . . . the law is clear because hospitals can't practice medicine; they can't supervise. One of the key elements of the employee/employer relationship, they can't supervise or control a doctor.

"And I said that, therefore, as to your doctor work, you can't be an employee, and, therefore, under FEHA, . . . for that work, you can't be an employee . . . .

"But I said that I had to find out what work he did. I said there may have been other work that was done. It wasn't speculation. It had to do with what the rules and regulations might have required that he do. It might have to do with testimony as to other work that he did. I didn't know. But it certainly created a fact question as far as I was concerned . . . .

"*And there was no evidence of any other work.* This scheduling thing, even if it were nondoctor work, was miniscule compared to what he was doing out there, which was doing his best to run the department to provide, safe, thorough, effective treatment for patients. That's what everybody understood that's what he was doing out there.

"Since employment is an element of the cause of action under FEHA, that alone is sufficient to defeat the first cause of action." (Italics added.)

After the arbitrator granted the motion for judgment as to the FEHA age discrimination claim, EMC presented its evidentiary case. The parties submitted posthearing briefing. Although Benson argued that he had proven EMC wrongfully terminated his services under the agreements, he did not challenge the arbitrator's finding that he was not an employee of EMC. In June 2017, the arbitrator issued a final award in

5

which he determined that Benson had not established entitlement to recovery under any legal theory.

In September 2017, Benson in propria persona filed a motion in district court to vacate the arbitrator's decision. Benson argued the arbitrator had denied him due process and erred in considering the evidence. Benson's motion was stricken for use of a California Judicial Council form in federal court. Benson refiled another motion to vacate the arbitrator's award, and EMC opposed the motion by requesting that the district court confirm the arbitration award. In its briefing, EMC noted that the FEHA age discrimination claim was dismissed because "[t]he [a]rbitrator specifically found that [Benson] had failed to establish he was EMC's employee." Benson opposed EMC's request for confirmation of the arbitrator's award.

A magistrate judge heard Benson and EMC's motions on January 10, 2018. The magistrate issued findings and recommendations in April 2018. The magistrate found that "[i]t is undisputed that the parties entered into valid agreements providing for binding arbitration on all claims encompassed by [Benson's] complaint." The magistrate rejected Benson's complaints that he had never agreed to binding arbitration or that he was coerced by his own attorney into participating in arbitration on grounds that he had neither initially opposed the arbitration nor had he raised these arguments during the arbitration.

After the United States District Court magistrate judge issued the findings and recommendations, Benson filed an appeal to the district court. EMC opposed Benson's appeal to the district court. In its opposition, EMC noted that it sought confirmation of the arbitrator's final award because of the new complaint filed by Benson in 2018. Thus, EMC urged the district court to confirm the arbitrator's finding that Benson was not an employee of EMC.

The district court examined the case file and conducted a de novo review before determining that the magistrate's findings and recommendations were supported by the

6

record and proper analysis.  The motion for confirmation of the arbitrator's award was granted on August 29, 2018.  The district court clerk was directed to enter judgment and close the file.

### *The Present Action – 2018 Complaint*

While Benson's request to vacate the arbitrator's award and EMC's petition to confirm the arbitrator's award were pending in the United States District Court, Benson filed the present action in Butte County Superior Court on January 30, 2018.  Benson's complaint alleged causes of action for unpaid wages (Lab. Code, §§ 201-202) and unfair business practices (Bus. & Prof. Code, § 17200 et seq.).  In his complaint, Benson asserted he was an employee of EMC.  The unfair business practices claim was based on Benson's assertion that he was not paid employee wages to which he was entitled.

EMC responded with a motion to compel arbitration and for a stay of proceedings on the 2018 complaint in the Butte County Superior Court while the motion to confirm the arbitrator's award was pending in the United States District Court.  The superior court granted the stay.  After the district court granted the motion to confirm the arbitrator's award and entered judgment in favor of EMC, EMC moved to dismiss the 2018 complaint on the basis of collateral estoppel.  Benson opposed the motion to dismiss.

After a hearing, the superior court granted EMC's motion to dismiss the 2018 complaint.  Accordingly, the superior court entered an order dismissing the action. Benson timely filed a notice of appeal.[2]

---

[2]    An appeal generally lies only from a final judgment.  (Code Civ. Proc., § 904.1, subd. (a)(1).)  "A judgment is the final determination of the rights of the parties in an action or proceeding."  (Code Civ. Proc., § 577.)  Under this rule, "[a] paper filed in an action does not become a judgment merely because it is so entitled; it is a judgment only if it satisfies the criteria of a judgment."  (*City of Shasta Lake v. County of Shasta* (1999) 75 Cal.App.4th 1, 10.)  "It is not the form of the decree but the substance and effect of the adjudication which is determinative.  As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left

7

## DISCUSSION

## I

### *The Issue of Whether Benson was an EMC Employee*

Benson argues that his two actions have presented different issues so that collateral estoppel does not apply to the present action. He reasons that the gravamen of the present action is for a wage claim under a definition of "employee" adopted by the Industrial Welfare Commission. By contrast, Benson asserts, that his prior action involved a claim based on the narrower, common-law definition of "employee." We are not persuaded.

### A.

### *The Doctrine of Collateral Estoppel*

California law prohibits relitigation of claims and issues that have been conclusively adjudicated in a prior proceeding. (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1563.) The prohibition on relitigation of issues under " ' "collateral estoppel" ' " or " ' "issue preclusion" ' " operates to precludes a party from relitigating issues decided in a prior case. (*Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1335.) The applicability of collateral estoppel rests on five requirements: "1) the issue to be precluded must be identical to that decided in the prior proceeding; 2) the issue must have been actually litigated at that time; 3) the issue must have been necessarily decided; 4) the decision in the prior proceeding must be final and on the merits; and 5) the party against whom preclusion is sought must be in privity with

---

for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." (*Lyon v. Goss* (1942) 19 Cal.2d 659, 670.) Although denominated an order, the trial court's order in this case disposes of all issues between the parties and contemplates no further action. For purposes of appeal, we determine that it constitutes a final judgment.

the party to the former proceeding." (*People v. Garcia* (2006) 39 Cal.4th 1070, 1077 (*Garcia*).)

Collateral estoppel also rests on considerations of equity and fairness. Thus, " '[i]n addition to these factors, . . . the courts consider whether the party against whom the earlier decision is asserted had a "full and fair" opportunity to litigate the issue.' (*Roos v. Red* (2005) 130 Cal.App.4th 870, 880.) Collateral estoppel will not be applied 'if injustice would result or if the public interest requires that relitigation not be foreclosed.' (*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 902.) To determine whether to preclude relitigation on collateral estoppel grounds, judicial notice may be taken of a prior judgment and other court records." (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 90, fn. omitted.)

We review the question of whether the doctrine of collateral estoppel applies to bar a complaint under the independent standard of review. (*Groves v. Peterson* (2002) 100 Cal.App.4th 659, 667; *Smith v. ExxonMobil Oil Corp.* (2007) 153 Cal.App.4th 1407, 1415.) However, to the extent that an appellant contests the sufficiency of the evidence in support of a judgment, we review the challenge under the substantial evidence standard of review. Under this standard of review, "this court will not reweigh evidence, reappraise the credibility of witnesses, or resolve factual conflicts contrary to the trial court's findings, but only decide whether there is substantial evidence to support" the findings of the trial court. (*Eidsmore v. RBB, Inc.* (1994) 25 Cal.App.4th 189, 195.)

**B.**

***The Trial Court's Order***

In dismissing the present action, the trial court explained that "a review of the arbitration hearing transcript reveals that the arbitrator fully considered the issue of Benson's employment status after [the] taking of evidence. The arbitrator found [Benson] did not establish that he was an employee as required for his claim for age

9

discrimination under FEHA to proceed further.  The finding was fully litigated in that the arbitrator found he had presented insufficient evidence to support that he was an employee and that otherwise, as a matter of law, a doctor could not be a direct employee of the hospital."

The trial court further found that, "[w]hile the arbitrator's findings may have not been reduced to written form, they were clearly conclusive and a subsequent review of the federal magistrate's findings and the [district] court's confirmation do not reveal those findings were disturbed (or even at issue)."  The trial court concluded that "the issue of [Benson's] employment status in relation to the defendant is identical in both the prior arbitration and under the current Labor Code claims.  The arbitrator took evidence on the matter from both parties.  The arbitrator necessarily decided the issue as dispositive of the FEHA claim.  And, as conceded by [Benson], the arbitrator's decision is final and involved the same parties."

## C.

### *The Employee Issue*

The trial court correctly concluded that both the present and prior action involved the same issue of whether Benson was an employee of EMC.  In the former action, Benson's claim that his rights under FEHA were violated depended on his proof that he was an EMC employee.  "In order to recover under the discrimination in employment provisions of the FEHA, the aggrieved plaintiff must be an employee."  (*Shephard v. Loyola Marymount Univ*. (2002) 102 Cal.App.4th 837, 842.)  Thus, "[t]he anti-discrimination provisions of Government Code section 12940(a) do not cover independent contractors."  (*Jacobson v. Schwarzenegger* (C.D. Cal. 2004) 357 F.Supp.2d 1198, 1213 [collecting authority].)

In the present action, Benson must prove that he was an employee of EMC to establish his claim under Labor Code sections 201 and 202.  The Labor Code "imposes

10

the penalty for wilful failure to pay the wages of an *employee* immediately upon his discharge, pursuant to section 201 of the same code." (*Davis v. Morris* (1940) 37 Cal.App.2d 269, 274, italics added.) To this end the Labor Code provides that "[i]f an employer willfully fails to pay, without abatement or reduction," under sections 201, 202, and other sections not applicable here, "any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." (Lab. Code, § 203.)

The issue of whether Benson was an EMC employee was the same in both actions even if asserted in different causes of action. "Issue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) Thus, the arbitrator's finding that Benson was not an employee precludes him from reraising that issue against EMC in the present action.

Benson argues for a more expansive definition of employee for his Labor Code and unfair competition claims by relying on Industrial Welfare Commission wage orders Nos. 4-2001 and 5-2001. (Cal. Code Regs., tit. 8, §§ 11040 (Wage Order 4), 11050 (Wage Order 5).) Wage Orders 4 and 5, however, use identical language is declaring that they do not apply to persons "employed in an executive capacity," including those "licensed or certified by the State of California and is primarily engaged in the practice of . . . medicine . . . ." (Cal. Code Regs., tit. 8, §§ 11040, subd. 1(A)(1) & 1(A)(3)(a), 11050, subd. 1(B)(1) & 1(B)(3)(a).) Thus, neither wage order applies to Benson.

We reject Benson's attempt to split the employee issue by arguing for a more expansive test under his Labor Code cause of action than that for his prior FEHA cause of action. There is no possibility that Benson might have met the definition of employee under the Labor Code but not FEHA because, as the arbitrator expressly found, Benson

11

offered *no* evidence that he was an employee. Under any test, Benson was not an EMC employee.

Moreover, Wage Order 4 does "not apply to persons employed in administrative, executive, or professional capacities . . . ." (Cal. Code Regs., tit. 8, § 11040, subd. 1(A).) Benson argues that he does not fall within this provision because his work for EMC involved duties encompassing unique responsibilities as director of a new department at EMC that fell outside his duties as a physician and manager of the department. We reject the argument. The arbitrator found that "there was no evidence of any other work" in addition to Benson's "nondoctor work." In other words, Benson's current argument that he conducted work as an employee in addition to his independent contractor services as a doctor was previously decided by the arbitrator.

In short, the issues of Benson's status as an EMC employee has been conclusively decided by the arbitrator. Because Benson filed his 2018 complaint after the arbitrator issued his final award, he is precluded from relitigating the issue of whether he was an EMC employee in the present action.

## II

### *Issues Actually Litigated in the Prior Action*

Benson contends the issue of his status as an EMC employee was not actually litigated in the prior action. Benson asserts that "not one place in the [arbitrator's] award is there such a finding that Dr. Benson was an independent contractor, [instead] what it does provide is that in the arbitrator's opinion Dr. Benson failed to provide sufficient evidence to prove those claims in front of him." The argument is refuted by the record.

The issue of whether Benson was an EMC employee was actually litigated during the arbitration. Before the arbitration hearing commenced, the parties introduced evidence and briefed the issue of his employment status in arguing whether summary judgment should be granted by the arbitrator. During the evidentiary hearing, Benson

12

provided testimonial and documentary evidence.  The evidence included Benson testifying on his own behalf.  On the basis of the evidence, the arbitrator made factual findings on the record regarding the issue of whether Benson was an EMC employee.  Thus, the record supports the superior court's determination in this case that "the arbitration hearing transcript reveals that the arbitrator fully considered the issue of Benson's employment status after [the] taking of evidence.  The arbitrator found that [Benson] did not establish that he was an employee as required for his claim for age discrimination under FEHA to proceed further."

Contrary to Benson's argument on appeal, the arbitrator found that Benson was not an EMC employee.  Indeed, the arbitrator explained that, on the issue regarding whether Benson was an employee, there was no evidence of employee status.  Thus the arbitrator concluded, "Since employment is an element of the cause of action under FEHA, that alone is sufficient to defeat the first cause of action."  The arbitrator's finding was clear and conclusive.

Underlying Benson's argument is the assumption that the issue of employment status was not actually resolved during the arbitration because it was not expressly addressed in the arbitrator's written final award.  Benson cites no authority for the proposition that findings made on the record but not in written form preclude the findings from having the effect of collateral estoppel.  In any event, we reject the proposition because "[a]ll intendments and presumptions are indulged to support" the trier of fact's findings and conclusions "on matters as to which the record is silent, and error must be affirmatively shown."  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  Thus, we may rely on the implicit findings of an arbitrator.  (*Bennett v. California Custom Coach, Inc*. (1991) 234 Cal.App.3d 333, 339 [rejecting claim to attorney fees on grounds that the reasonable inferences drawn from the arbitrator's final award did not support the claim].)

The arbitrator's findings on the record and final award show that the employment issue was actually litigated and decided. Therefore, we reject Benson's argument that the employee issue was not litigated and decided on the merits in a prior action.

**III**

***Public Policy***

Benson argues that public policy does not support the application of collateral estoppel because he has a right to his day in court and the arbitration did not satisfy that right. We disagree.

This court rejected a similar challenge in *Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663. That case involved an arbitration of competing claims to a portion of the Yuba Goldfields. (*Id.* at p. 667.) The arbitration culminated in a finding that Cal Sierra Development, Inc. (Cal Sierra) had not proven its claims of trespass, nuisance, or conversion against George Reed, Inc., and its parent company (together, George Reed). George Reed had built an asphalt plant on the property under a license from the company that contested Cal Sierra's claim to the property. (*Id.* at p. 668.) After the arbitration concluded, Cal Sierra sued George Reed for trespass and other causes of action based on its claim to the Yuba Goldfields. (*Ibid.*) The trial court granted George Reed's motion to dismiss the case on grounds of res judicata. (*Ibid.*) This court affirmed the trial court's judgment by concluding that the record established all elements necessary for res judicata. (*Id.* at pp. 678-679.)

This court also rejected an argument that it would be unfair to apply the doctrine of collateral estoppel because it would deprive Cal Sierra of its opportunity to litigate its claims against George Reed. (*Cal Sierra Development, Inc. v. George Reed, Inc.*, *supra*, 14 Cal.App.5th at pp. 679-680.) This court explained that "we do not find the application of claim preclusion in this case to be inequitable. The issue of whether the installation and operation of Reed's asphalt plant constituted a trespass upon Cal Sierra's mining

14

rights was arbitrated. There, Cal Sierra sought to recover the benefits obtained by Reed due to the alleged trespass. Thus, Cal Sierra had the opportunity and the incentive to fully litigate its claims against Reed in the arbitration. Cal Sierra insists the arbitration panel did not decide the trespass claim; however, as we have discussed, this assertion is incorrect. The arbitration award states that trespass, conversion, and private nuisance 'were not proven.' " (*Id.* at p. 680.)

The same reasoning applies in the present case. During the arbitration, Benson had a full opportunity to litigate the issue of whether he was an employee of EMC. However, his testimony and evidence introduced during the arbitration hearing did not establish that he was an EMC employee. The issue was expressly decided by the arbitrator on the basis of the evidence introduced by Benson. Our conclusion comports with the California Supreme Court's guidance that "the *primary* public policy goal underlying the doctrine of collateral estoppel [is] ' "limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy." ' " (*Garcia, supra*, 39 Cal.4th 1070, 1077, quoting *People v. Sims* (1982) 32 Cal.3d 468, 479 italics added.) We conclude the application of collateral estoppel does not violate public policy.

## DISPOSITION

The order dismissing the action is affirmed.  EMC shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


        /s/
        HOCH, J.


We concur:


/s/
BLEASE, Acting P. J.


/s/
DUARTE, J.