MEMORANDUM **
Appellant Erica Schoen (“Schoen”) appeals a grant of summary judgment by the district court in favor of Appellee Freight-liner LLC (“Freightliner”) on two employment discrimination claims arising under Oregon state law. Freightliner cross appeals the district court’s decision to admit certain evidence in considering these claims and the district court’s determination that Schoen has successfully stated a claim on one of the two Oregon statutory provisions under which she brought suit. The district court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We reverse the district court’s grant of summary judgment to Freightliner and affirm the district court on Freightliner’s two cross-appeals.
“We review de novo a grant of summary judgment and must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.” Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir.2000). The district court found that the “more persuasive evidence” standard from Blue Ridge Insurance Co. v. Stanewich, 142 F.3d 1145, 1147 (9th Cir.1998), applied to Schoen’s claims because they were “factually implausible.” However, as we explain in greater detail below, Schoen’s position on the two key factual disputes, uniformity of the leave policy and trickery, is not implausible. Moreover, deposition testimony from Freightliner employees, written contemporaneous documentation created by Freightliner employees, and Freightliner’s own written policies are consistent with Schoen’s testimony. Accordingly, we do not apply any heightened standard to Schoen’s claims.
The district court was correct to apply the McDonnell Douglas framework to Schoen’s employment discrimination claims under Or.Rev.Stat. § 659A.040 and Or.Rev.Stat. § 659A.030(l)(f). Both of these two claims present the same factual question — whether Freightliner terminate ed Schoen in retaliation for filing Schoen I. In this circuit, the McDonnell Douglas burden shifting framework for discrimination and retaliation claims is considered to be a procedural rule, so we apply this framework to Schoen’s state law claims. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1092 (9th Cir.2001). Under McDonnell Douglas, Schoen made a prima facie showing of retaliation, and Freight-liner articulated a legitimate, non-discriminatory reason for Sehoeris termination— her violation of Freightliner’s written medical leave policy. Therefore, the question is whether Schoen has presented evidence sufficient to raise a genuine issue of material fact on pretext.
We hold that there is sufficient evidence in the record to create a genuine *52 issue of material fact whether Freightliner’s reasons for terminating Schoen were pretextual. Freightliner’s written medical leave policy provides that, in order to take a medical leave of absence for three days or more, an employee must submit a time-loss authorization (“TLA”) — which is documentation supporting this absence — by the end of her shift on the third day of absence. In order to extend a previously authorized medical leave, an employee must submit a new TLA by the end of her shift on the day after which her previous TLA has expired. When an employee misses work without meeting these requirements, Freightliner issues a “reporting requirements letter” (“RRL”), and the collective bargaining agreement between Freightliner and Schoen’s union mandates termination for any employee who receives three RRLs.
Schoen argues either that there were informal exceptions to Freightliner’s written medical leave policy that should have excused Schoen or that, if these exceptions did not exist, Freightliner induced her into believing they did. She presented evidence that creates an issue of fact on both of these questions. Because Schoen was terminated for receiving three RRLs, she need only present such evidence for any one of the three RRLs in order to undermine Freightliner’s stated rationale for terminating her.
First, Schoen has presented evidence on how strictly Freightliner enforces its written TLA policy with respect to her first and second RRL. Karla Steffenson and Shirley Oliver, who both work for Freightliner’s nurse Rosemary Rasmussen, and who issue the RRLs, stated that they would not generally issue an RRL if an employee calls to explain that a late doctor’s appointment will prevent the employee from providing a TLA on time. Steffenson acknowledged that, in these circumstances, she would generally give the employee an opportunity to submit a TLA by whatever time the following day the employee says would be feasible before issuing an RRL. Freightliner contends these statements, however, relate only to daily absences and initial requests for medical leave and not to extensions of medical leave. This distinction is not apparent from the deposition testimony itself or from Freightliner’s written policies. Moreover, the purported distinction is not borne out consistently in the later declarations, as Oliver declares that her earlier deposition testimony applied generally to employees who “call[] in absent due to illness” not to employees seeking initial medical leave. Finally, Freightliner’s counsel wrote a letter to Schoen’s counsel in December 2005 justifying the first RRL because Schoen had “called in late” and RRLs are “sent automatically when there is no call as required under Freightliner’s attendance reporting and medical leave of absence policy.” (emphasis added) Freightliner’s counsel’s contemporaneous characterization of the leave policy is not consistent with the purported distinction between initial medical leave requests and extensions of medical leave Freightliner urges on appeal. Although Freightliner’s purported distinction is plausible, the evidence does not make Schoen’s version implausible, and the jury will have to resolve that dispute. Freightliner claims that these statements relate to Freightliner’s policy for employees who call in sick, but based on the evidence in the record, Freightliner does not require any written medical documentation for employees who simply call in sick.
Assuming, as based on this evidence we must, that Freightliner does have a practice of allowing late submissions when an employee could not get a note because of a late doctor’s appointment, if any of Schoen’s RRLs represented deviations *53 from this practice, Schoen has adduced evidence sufficient to support a finding of pretext. It is undisputed that Schoen’s first RRL was the result of a TLA submitted late because of a late doctor’s appointment, and that Schoen called to inform Freightliner of this situation, though the parties do dispute whether Schoen merely left a voicemail early in the morning (as Freightliner asserts) or whether she also spoke to Rasmussen later. Schoen has also presented evidence that her second RRL involved a late doctor’s appointment and that she called to let Freightliner know that her TLA would be late.
Second, Schoen has presented evidence that she was personally given assurances by Freightliner that she could submit her TLAs late, supporting her contention that, if an informal deviation from the written TLA policy did not exist, she was led to believe that it did. Schoen presented a tape recorded voicemail left for her by Rasmussen sometime after her first RRL, in which Rasmussen assured her that, in the event of future late appointments, she could “just call and leave a message on what date your appointment is, and then we’ll just plan and put you for your update the following day after — by 3:00 the following day. That will give you plenty of time ...” Rasmussen acknowledges leaving a message like this. Rasmussen also acknowledges telling Schoen in at least one separate conversation that when she had a late doctor’s appointment and could not get a TLA in on time, she could just “get the note in as soon as possible.” Because Schoen’s second RRL was issued after Schoen submitted a one-day-late TLA following a late doctor’s appointment, this evidence creates a genuine issue of material fact as to whether Rasmussen, maliciously or not, led Schoen to believe she could submit her TLA one day late on her second RRL.
Schoen also stated in her declaration that, for her first and third RRLs, she was specifically told that turning her TLA in late was acceptable. For her first RRL, Schoen asserts that she spoke to Rasmussen the day her TLA was due, and that Rasmussen had said that it was “fine” for her to turn her TLA in late because of a late doctor’s appointment. Schoen asserts that approximately the same thing happened with her third RRL — that she spoke to Rasmussen the day her TLA was due, and Rasmussen told her it was “not a problem” to turn the TLA in the next day, and then that, on the following day, Schoen again called Rasmussen to say she would need one more day, and Rasmussen again said that it was “not a problem” if she turned the TLA the following day. Rasmussen and Freightliner claim that these conversations never happened and, though this may be true, this credibility question presents an issue to be resolved by a finder of fact.
Freightliner cross-appeals on two issues, and we affirm the district court on both. First, Freightliner argues that various documents submitted in support of Schoen’s opposition to Freightliner’s motion for summary judgment should not be admitted because they represent evidence of animus that occurred before Schoen I that is either precluded by Schoen I or irrelevant to Schoen’s claims of discrimination in this case. We apply Oregon rules of issue preclusion, Jacobs v. CBS Broadcasting, Inc., 291 F.3d 1173, 1177 (9th Cir.2002), and under Oregon law, issue preclusion “precludes future litigation on a subject issue ... if the issue was actually litigated and determined in a setting where its determination was essential to the final decision reached,” Drews v. EBI Cos., 310 Or. 134, 795 P.2d 531, 535 (1990) (internal quotations omitted). There is no way of knowing whether Schoen I preclu- *54 sively determined whether Freightliner had any animus against Schoen at all during the relevant period. The jury in Schoen I could have found that Schoen had failed to prove any number of the eight elements in Schoen’s discrimination claim without necessarily finding that no one at Freightliner harbored any animus against Schoen.
Second, Freightliner argues that Schoen has failed to state a claim under Or.Rev.Stat. § 659A.040. Section 659A.040(1) provides a cause of action for workers who have been discriminated against “because the worker has applied for benefits or invoked or utilized the procedures provided in ORS chapter 656 [workers’ compensation procedures].... ” Oregon’s workers’ compensation statute and rules define what is required to “invoke” a workers’ compensation claim very broadly, and Schoen’s first litigation with Freightliner clearly comes within these definitions. Or.Rev.Stat. § 656.005(6) (defining a workers’ compensation claim as “a written request for compensation from a subject worker or someone on the worker’s behalf, or any compensable injury of which a subject employer has notice or knowledge”); Or. Admin. R. 839-006-0105(7) (defining “invoke” under the statute as “including], but [ ] not limited to, a worker’s reporting of an on-the-job injury or a perception by the employer that the worker has been injured on the job or will report an injury”).
REVERSED AND REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9 th Cir. R. 36-3.