Filed 5/28/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GARY GREENE, | B258021 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC478655) |
| v. | |
| BANK OF AMERICA et al., | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on May 12, 2015, be modified as follows.
On page 14 at the end of the first full paragraph, add the following:

**Plaintiff had a full and fair opportunity to litigate the issue of probable cause such that there has not been an injustice or violation of public policy that should in this case foreclose the application of the doctrine of collateral estoppel. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 834-835.)**

There is no change in judgment. The petition for rehearing is denied.

_____

MOSK, J.                    TURNER, P. J.                    KRIEGLER, J.

Filed 5/12/15 (unmodified version)

**CERTFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GARY GREENE, | B258021 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC478655) |
| v. | |
| BANK OF AMERICA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frank Johnson, Judge. Affirmed.

Akudinobi & Ikonte, Emmanuel C. Akudinobi, Chijioke O. Ikonte, for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Andrew S. Elliott, for Defendants and Respondents.

# INTRODUCTION

This matter, before us for the second time, concerns plaintiff and appellant Gary Greene's malicious prosecution action against defendants and respondents Bank of America (Bank) and its employee Jenny Casasola.[1] In his action, plaintiff alleged that he went to a branch of the Bank to cash two checks he received from State Farm Insurance in settlement of a claim. When the Bank refused to cash the checks, a dispute arose between plaintiff and Bank employees. Casasola, the Bank's branch manager, called the police and reported that plaintiff had threatened to blow up the Bank's branch. Plaintiff was arrested and charged with making a criminal threat in violation of Penal Code section 422. After a jury trial, plaintiff was acquitted.

In our prior opinion, we reversed a judgment in favor of defendants that was entered after their successful Code of Civil Procedure section 426.16 motion to strike plaintiff's action (anti-SLAPP[2] motion). On remand, defendants brought a summary judgment motion on the ground of the collateral estoppel effect of the magistrate's finding of probable cause based on a credibility determination at plaintiff's preliminary hearing in his criminal proceeding. Contrary to plaintiff's contention in connection with defendants' anti-SLAPP motion, we did not address the issue of collateral estoppel expressly or by implication in our prior opinion. Defendants had not raised that issue. In affirming the judgment, we hold that the doctrine of law of the case does not preclude consideration of the application of the doctrine of collateral estoppel and that under the

---

[1] Plaintiff also sued Bank employee Yahaira Reyes for malicious prosecution. We affirmed a judgment in Reyes's favor in our prior opinion. (*Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 457, fn. 1 (*Greene*).) In his complaint, plaintiff asserted causes of action for excessive force against the City of Los Angeles (City) and three police officers the City employed. According to defendants, judgment was entered in the police officers' favor following trial and that matter is on appeal. The parties have not disclosed, and the record does not reflect, the resolution or status of the action against the City.

[2] SLAPP is an acronym for strategic lawsuit against public participation. (*Fahlen v. South Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.)

doctrine of collateral estoppel, the determination of probable cause by the magistrate in plaintiff's criminal proceeding, when the issue of Casasola's credibility had been raised before the magistrate, defeats, as a matter of law, plaintiff's malicious prosecution claim.

## BACKGROUND[3]

### I.      The Anti-SLAPP Motion Appeal

In our prior opinion, we set forth the evidence presented in connection with defendants' anti-SLAPP motion as follows: "Plaintiff's trip to the Bank began with a teller, who told him that she could cash the smaller of his two checks, which was for $40, but not the larger check, which was for $7,250.97. For that, she needed authorization from her supervisor, Yahaira Reyes. Reyes either could not or would not cash the larger check. Plaintiff then talked to the branch manager, Casasola. It was Casasola who called the police and said that plaintiff was threatening to blow up the Bank. Plaintiff was outside the Bank, smoking a cigarette and waiting for his checks to be verified, when he was arrested. That much, plaintiff and defendants agree on.

"Defendants submitted evidence with their motion to strike, and plaintiff submitted evidence with his response to that motion; their accounts of the events differ.

"Plaintiff declared that on February 25, 2010, he picked up two checks from the Woodland Hills office of his car insurer, State Farm. Both were on State Farm's Bank of America account, and they were signed by the same person. The State Farm employee who gave him the checks told him that he could cash the checks at the Bank of America branch nearby on Canoga Avenue, and that the checks were 'preapproved and easily verifiable based on a long standing agreement between State Farm and Bank of America.'

"Plaintiff went to the branch the State Farm employee recommended and waited in line for a teller. The teller told him that since he did not have a Bank of America account, the Bank would charge him to cash the checks. He knew that that might be the case, and told her that he did not have a problem with that. At the teller's request, he

---

**3**      We state the facts in accordance with the standards for a summary judgment.

endorsed the checks.  The teller then said that she could cash the smaller check, but that the larger check needed approval from her supervisor.

"The supervisor, Reyes, came to the window and said that she could not cash the check unless plaintiff opened an account.  Plaintiff told her that he did not want to open an account, that he needed the money right away (he had arranged to buy a car), and that State Farm had told him that the checks were preapproved.  Reyes said that she could not verify the signature on the larger check and that he would have to deposit it.  Plaintiff called State Farm and told a claims adjuster, Charles Gonzalez, what was going on.  Gonzalez asked to speak to Reyes, but she refused to talk to him or to give plaintiff her phone number, so that Gonzalez could call her.  Plaintiff was able to get Reyes's business card from the teller.  He gave Reyes's phone number to Gonzalez, and shortly thereafter heard Reyes's phone ring.

"Plaintiff submitted State Farm's records concerning the call.  Gonzalez wrote that he spoke to Reyes and told her that he could verify the check, specifying the check number, amount, and the name of the employee who had signed it.  Reyes said that the Bank had copies of the signatures of all State Farm employees who could issue checks, and that she could not match the signature on plaintiff's check.  Gonzalez expressed skepticism, never having had any similar problem before.  Reyes simply repeated that she could not verify the signature.

"Plaintiff declared that while Reyes was on the phone and afterward, he took a seat in the lobby and waited, but after an 'appreciable time' got up and asked Reyes about his money.  She ignored him.  He asked for his checks back.  She ignored him.  Plaintiff complained, telling her that he was going to talk to her manager and call the police, who would make her give him his checks.

"Reyes continued to ignore him.  Plaintiff then sought out Casasola, the branch manager.  Casasola was talking to another dissatisfied customer.  Plaintiff was frustrated and 'began venting' about the bad customer service at the Bank.  He did not, however, threaten anyone, or make any threat about blowing up the Bank.

4

"Plaintiff declared that while he waited for Casasola to finish speaking to the other customer, he saw Reyes approach Casasola's desk and give Casasola his checks. When he finally was able to speak to Casasola, he told her that he wanted to cash the checks and gave her his identification and Gonzalez's phone number. She promised to take care of the problem. Plaintiff thanked her and asked for permission to wait outside, so that he could smoke. Casasola agreed. Plaintiff went outside to smoke. He was outside, smoking, when police arrived and arrested him.

"Plaintiff declared that he never balled up his fists, or threatened any person or bank property with physical harm.

"According to Reyes's and Casasola's declarations, Reyes sought to verify the signature on the check, using a specified bank system, but could not do so. Plaintiff became 'highly agitated,' raised his voice, called Reyes a 'bitch,' and threatened to cause a commotion. Plaintiff then approached Casasola.

"Casasola declared that she asked plaintiff to wait, and when he would not, got the checks from Reyes, whom she observed to be 'visibly upset' and 'on the verge of tears.' Casasola then told plaintiff to sit down, calm down, and lower his voice. He stood about 10 feet away from her and shouted threats, saying that he was not afraid of the police, that he was 'going to blow shit up,' that he was an ex-convict, and that he was not afraid to blow the place up or break the doors. As he was making these threats, he was balling his fists, throwing his arms in the air, and taking 'an aggressive physical stance.'

"It was at this time that Casasola called police.

"In the 911 call, Casasola said that plaintiff was in the Bank branch and 'he's saying he can blow "s" up if I don't help him he's going to do that. I need a unit over here, please.' She said that plaintiff was 'threatening associates,' and that he had 'threatened to blow up the Bank' and to break her glasses (or break the glass) as he left the Bank. The dispatcher got plaintiff's description and Casasola's name, and told her that 'if anything changes call us back.' The dispatcher also asked if Casasola had plaintiff's name. She said, 'No, but I can get it as soon as I sit down with him.'

"Casasola did sit down with plaintiff, who, according to her declaration, calmed down and sat at her desk. Casasola left plaintiff, went to Reyes's work station, and told her to continue trying to verify the checks. At that point, plaintiff told Casasola that he was going outside to smoke.

"After plaintiff posted bail, he took the checks (which police had retrieved and given to him) to another bank branch, where the manager verified the checks by calling a bank hotline. Plaintiff had his cash in less than five minutes.

"Plaintiff also submitted Casasola's testimony in the criminal proceedings. At the preliminary hearing, Casasola testified that plaintiff said, 'If you don't cash this check for me, I am not afraid to blow up this place' and that plaintiff said that he would blow up the banking center if she did not cash his check. She also testified that after she called police she sat with plaintiff at her desk, and that in the five to seven minutes it took for police to arrive, she was worried about her safety and the safety of others in the Bank. She did not, however, evacuate the Bank, warn customers or employees, look for security guards who might help, or lock the doors after plaintiff went outside. She also testified that she needed to verify the larger check because it was for an amount in excess of $10,000.

"In addition to the evidence previously summarized, defendants submitted a portion of plaintiff's preliminary hearing transcript in which he testified that while he was at the Bank, he said, in a loud voice, that he was so frustrated that he felt like kicking over a cardboard display in the Bank, although he did not go near the display. He also testified that he had 'yelled at the teller,' 'mouthed off,' and 'abused the peace of the Bank,' explaining that he abused 'the tranquility,' and that 'I was loud,' but that he did not call anyone names. He also testified that when Reyes refused to give his checks back, he told her, 'you are afraid that I will complain about you; . . . you have control issues.' He was trying to put her 'on blast,' or embarrass her for providing bad customer service. [Footnote omitted.]

"Defendants also submitted a different portion of the trial transcript, where an unidentified witness, presumably a police officer, testified that when the witness spoke to Casasola, she was visibly shaken, so that the witness had to advise her to take a deep

6

breath, and that 'it's okay, we're here.'" (*Greene, supra,* 216 Cal.App.4th at pp. 458-461.)

Defendants filed an anti-SLAPP motion to strike plaintiff's malicious prosecution action, which motion the trial court granted. Plaintiff appealed. On appeal, defendants argued, in part, that the trial court properly had granted their anti-SLAPP motion because plaintiff could not show a lack of probable cause, an element of a malicious prosecution claim, and therefore could not prevail on his malicious prosecution claim.[4] (*Greene, supra,* 216 Cal.App.4th at p. 465.) We rejected defendants' argument and reversed the judgment in their favor. We held that when, as in this case, the evidence on the issue of probable cause was in conflict, the fact finder is to decide whether facts exist to warrant or reject an inference of probable cause. (*Id.* at pp. 465, 467.)

## II.      Defendants' Summary Judgment Motion

On remand, defendants moved for summary judgment. They argued that they were entitled to summary judgment because plaintiff was collaterally estopped from relitigating the issue of whether defendants reasonably believed there were grounds for his arrest and prosecution—i.e., the probable cause element of a malicious prosecution cause of action. Defendants argued that plaintiff's claim that Casasola's testimony that he had uttered the threat to blow up the Bank was false had been rejected by the magistrate at the preliminary hearing in finding probable cause that plaintiff committed a

---

**4**      In considering the application of the anti-SLAPP statute, courts engage in a two-step process. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712, implicitly overruled on another ground as stated in *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 380.) "''''The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue. [Citation.]' [Citation.]" [Citations.]'" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 34-35; see *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456.)

7

crime to hold him over for trial and the trial judge in plaintiff's criminal trial in denying plaintiff's Penal Code section 1118.1 motion for acquittal based on insufficient evidence.

In support of their summary judgment motion, defendants presented the following undisputed facts: On September 7, 2010, the Los Angeles County Superior Court conducted plaintiff's preliminary hearing in his criminal case. At the preliminary hearing, plaintiff "placed the issue of Casasola's credibility squarely before the Court." Plaintiff's "counsel raised the affirmative defense that Casasola's testimony during the preliminary hearing was 'not what happened,' and challenged her integrity by vigorously cross-examining her. Greene also testified on his own behalf that (1) the only truthful part of Casasola's testimony concerned how far apart she and Greene were during their discussion, (2) he never said the word 'bomb' and he never said the phrase 'blow up,' and (3) he never threatened to blow up the bank." At the conclusion of the preliminary hearing, the magistrate found Casasola's testimony to be credible and sufficient cause to hold plaintiff over for a trial for violating Penal Code section 422. The magistrate stated, "I have no reason to find that the witness lied in this case. I don't see a motive for her having to do that. When she said that she heard the defendant say, 'I've got a bomb,' and could blow her up, I believe that testimony, and the motion to dismiss is denied. [¶] It appearing to me from the evidence presented that the following offense has been committed, and there is sufficient cause to believe the following defendant guilty thereof to wit: Gary Ray Greene, violation of Penal Code section 422." At the conclusion of the People's evidence at plaintiff's subsequent criminal trial, plaintiff moved for acquittal for lack of sufficient evidence pursuant to Penal Code section 1118.1. The trial court denied the motion, ruling, "I've listened to the evidence, and I believe there's more than enough evidence for this case to go to the jury, and if there is a conviction, to sustain the conviction on appeal. All right. You're [sic] motion is denied." After a trial, plaintiff was acquitted.

The trial court granted defendants' summary judgment motion. In its ruling, the trial court stated, "After a contested preliminary hearing at which the defendant (plaintiff herein) testified on his own behalf, the magistrate made an explicit finding that 'probable

8

cause' existed, precluding the re-litigation of that issue in this case. The magistrate also explicitly found the complaining witness Casasola to be credible, and by reference defendant (plaintiff herein) to be not credible. [¶] The appellate court decision in Greene v. Bank of America (2013) 126 Cal.App. 4th 454 did not discuss or decide the issue of collateral estoppel thus creating no legal impediment to the above ruling."

## DISCUSSION

Plaintiff argues that the trial court erred in granting defendants' summary judgment motion. He contends that we decided the issue of probable cause in *Greene, supra,* 216 Cal.App.4th 454 and that the doctrine of law of the case precluded defendants from relitigating that issue. Collateral estoppel was not applicable in this case, plaintiff **also** contends, because the magistrate's probable cause determination was procured through fraud, lies, and fabricated evidence.

### I.    Standard of Review

Summary judgment is granted when the moving party demonstrates that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) We review an appeal of a summary judgment de novo, as the appeal only involves legal issues. (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017.)

### II.    Application of Relevant Principles

As the Supreme Court said, "To establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued

9

to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' [Citations.]" (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871-872.) We said in *Greene, supra,* 216 Cal.App.4th at page 354, "'When, as here, the claim of malicious prosecution is based upon initiation of a criminal prosecution, the question of probable cause is whether it was objectively reasonable for the defendant . . . to suspect the plaintiff . . . had committed a crime.' [Citation.]"

### A.     Law of the Case

Plaintiff has invoked the law of the case doctrine. That doctrine is "that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal . . . . [Citations.]" (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892-893 [fn. omitted].) As stated by the Supreme Court, "The doctrine of the law of the case does not extend to points of law which might have been but were not presented *and determined* on a prior appeal." (*DiGenova v. State Board of Education* (1962) 57 Cal.2d 167, 179.) But as noted in *Ellison v. Ventura Port District* (1978) 80 Cal.App.3d 574 at page 579, "This general rule . . . is . . . subject to an important exception. The doctrine is held applicable to questions not expressly decided but implicitly decided because they were essential to the decision on the prior appeal. [Citation.]" A question has been impliedly decided, even though not expressly mentioned in an appellate opinion, if the appellate court could not have rendered its opinion without deciding the issue. (*City of Oakland v. Superior Court* (1983) 150 Cal.App.3d 267, 277-278.)

Plaintiff contends that in *Greene, supra,* 216 Cal.App.4th 454, the issue we resolved was "'whether a finding of probable cause procured by fraud in a criminal prosecution can vitiate a probable cause determination in a civil action for malicious prosecution.'" In *Greene*, however, we held that when the evidence concerning the question of probable cause is in conflict, the fact finder must resolve the issue. (*Id.* at p.

465.) Because "there was a conflict of the evidence on whether Casasola honestly believed that plaintiff had threatened to blow up the Bank, or whether she deliberately lied," we reversed the judgment in favor of defendants. (*Id.* at pp. 465, 467.) If Casasola lied, we explained, she did not have probable cause. (*Id.* at p. 465.)

In *Greene, supra,* 216 Cal.App.4th 454, we did not decide, either expressly or by implication, the issue of whether the probable cause determination that the magistrate made in plaintiff's preliminary hearing, based on the magistrate's finding that Casasola testified truthfully about plaintiff's threat, was entitled to collateral estoppel effect in plaintiff's subsequent civil action for malicious prosecution. As defendants point out, they did not raise that issue in the earlier appeal. Our discussion in our prior opinion of the preliminary hearing was confined to a description of evidence adduced at that hearing and did not address the magistrate's ruling. (*Id.* at p. 461.) Accordingly, the doctrine of law of the case did not preclude defendants from relitigating the issue of probable cause.

### B. Collateral Estoppel

The doctrine of collateral estoppel, "or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.'" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) "'A prior determination by a tribunal will be given collateral estoppel effect when (1) the issue is identical to that decided in a former proceeding; (2) the issue was actually litigated and (3) necessarily decided; (4) the doctrine is asserted against a party to the former action or one who was in privity with such a party; and (5) the former decision is final and was made on the merits.' (*Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1339 [79 Cal.Rptr.2d 763].) [¶] Federal and state courts have consistently held that the doctrine of collateral estoppel may preclude relitigation in a civil suit of issues that were decided in a prior criminal proceeding. [Citations.]" (*McCutchen v. City of Montclair* (1999) 73 Cal.App.4th 1138, 1144 (*McCutchen*).)

Generally, the requirements of the doctrine of collateral estoppel "will be met when courts are asked to give preclusive effect to preliminary hearing probable cause

11

findings in subsequent civil actions for false arrest and malicious prosecution. [Citation.]" (*Wige v. City of Los Angeles* (9th Cir. 2013) 713 F.3d 1183, 1185 (*Wige*); see *McCutchen, supra,* 73 Cal.App.4th at p. 1144; *Haupt v. Dillard* (9th Cir. 1994) 17 F.3d 285, 288 [probable cause established at state court preliminary hearing]; *Crumley v. City of St. Paul* (8th Cir. 2003) 324 F.3d 1003, 1007 [state court determination that probable cause to arrest collaterally estopped contrary ruling in section 1983 action even though there was an acquittal]; *Hubbert v. Moore* (10th Cir. 1991) 923 F.2d 769, 773 [probable cause determination in state preliminary hearing precludes false arrest claim in federal court], superseded by rule on another ground as stated in *Green v. Auto Pro of Okla. LLC* (10th Cir. 2009) 345 Fed.Appx. 339, 341; Avery et al. Police Misconduct: Law and Litigation (2014) § 9:6 ["A determination of probable cause at a preliminary hearing may preclude a suit for false arrest or for malicious prosecution"].) "One notable exception to this rule would be in a situation where the plaintiff alleges that the arresting officer lied or fabricated evidence presented at the preliminary hearing. [Citation.] When the officer misrepresents the nature of the evidence supporting probable cause and that issue is not raised at the preliminary hearing, a finding of probable cause at the preliminary hearing would not preclude relitigation of the issue of integrity of the evidence." (*McCutchen, supra,* 73 Cal.App.4th at p. 1147.) Defendants argue, and we agree, that the stated exception itself contains an exception—i.e., if the plaintiff alleges that the arresting officer lied or fabricated evidence at the preliminary hearing, plaintiff challenges that evidence at the preliminary hearing as being false, and the magistrate decides the credibility issue in the arresting officer's favor, then collateral estoppel still may preclude relitigation of the issue in a subsequent civil proceeding involving probable cause. (See *Guenther v. Holmgreen* (7th Cir. 1984) 738 F.2d 879, 884 [cited in *McCutchen, supra,* 73 Cal.App.4th at page 1144 and holding the plaintiff's 42 U.S.C. section 1983 claim that he was arrested without probable cause was defeated by a probable cause determination in a state court preliminary hearing in which the plaintiff challenged and fully litigated the issue of the veracity of the arresting officer and other

12

witnesses who supplied the basis for probable cause ]; see also *Wige, supra,* 713 F.3d at p. 1187.)

Plaintiff acknowledges that a probable cause determination at a preliminary hearing can, by collateral estoppel, preclude a redetermination of the issue of probable cause in a malicious prosecution case. He argues that the doctrine is inapplicable here, however, because the probable cause determination at the preliminary hearing was produced by Casasola's false testimony. In support of this argument, plaintiff relies on *Wige, supra,* 713 F.3d 1183 for the proposition that the identity of issues requirement of collateral estoppel is not met "[i]f the evidence known to the arresting officers *is* materially different from the evidence presented at the preliminary hearing." (*Id.* at 1186.) In *Wige*, the court reasoned that when the plaintiff alleges the arresting officer presented false evidence the identity of issues requirement for collateral estoppel "will not be met the evidence available and known to the arresting officers is different from the evidence presented to the court." (*Ibid*; see *Darrah v. City of Oak Park* (2001) 255 F.3d 301, 311 (*Darrah*); but see *Hinchman v. Moore* (2002) 312 F.3d 198, 203 [although following *Darrah,* "[W]e frankly find the logic of *Darrah*'s collateral estoppel holding questionable. A state court judge ruling on the presence or absence of probable cause in a criminal action must necessarily take into account the veracity of the officers' statements"].) Plaintiff contends that the facts known to Casasola were materially different than the evidence presented at the preliminary hearing because she knew the Bank and its employees were at fault in the dispute concerning his attempt to cash the checks and that she knew he did not threaten, and did not have the means, to blow up the branch of the Bank.

Although plaintiff accurately describes the holding in *Wige, supra,* 713 F.3d 1183, his reliance on that holding is misplaced because the facts in *Wige* are distinguishable from the facts in his case. Citing *Guenther v. Holmgreen, supra,* 738 F.2d at page 884 for the proposition that "in some circumstances a probable cause finding necessarily entails a rejection of challenges raised to the veracity of the arresting officer," the court in *Wige* explained that the state court at the preliminary hearing in *Wige* did not purport to

13

rule on the arresting officer's veracity in making its probable cause determination. (*Wige, supra,* 713 F.3d at p. 1187.)

In this case, however, plaintiff challenged Casasola's veracity at plaintiff's preliminary hearing and the magistrate expressly found that Casasola was telling the truth when she testified about plaintiff's threat. Accordingly, the magistrate's probable cause determination, based on its credibility finding that Casasola testified truthfully about plaintiff's threat, was sufficient to invoke collateral estoppel. (*Guenther v. Holmgreen, supra,* 738 F.2d at p. 884; *Redmond v. Sanders* (E.D. Mich. 2012) 858 F.Supp.2d 809, 815 [distinguishing *Darrah, supra,* 255 F.3d 301, in that unlike in *Darrah* the veracity of the officers was litigated at the state preliminary hearing].)

Because that probable cause determination was entitled to collateral estoppel effect in plaintiff's action, plaintiff could not establish the lack of probable cause element for a malicious prosecution action (*Sheldon Appel Co. v. Albert & Oliker, supra,* 47 Cal.3d at p. 871; *Greene, supra,* 216 Cal.App.4th at p. 465). Defendants were therefore entitled to summary judgment (Code Civ. Proc., § 437c, subd. (p)(2)).

## DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION**


MOSK, J.


We concur:


TURNER, P. J.


KRIEGLER, J.

15