Filed 10/26/15  Owens v. Schulte CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| MICHAEL P. OWENS et al, | B259206 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. NC058867) |
| v. | |
| LORI RENEE SCHULTE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ross M. Klein, Judge.  Affirmed.

Farley Law Firm, Michael L. Farley, Rhys C. Boyd-Farrell for Plaintiffs and Appellants.

Green & Hall, Robert L. Green, Katherine V. Lizardo for Defendant and Respondent.

## INTRODUCTION

Defendant and respondent Lori Schulte (Schulte) was a sales agent for Hearthside Homes, Inc. (Hearthside), the entity responsible for building and selling developer Signal Landmark's[1] Brightwater project, a housing development of newly constructed single family residences in Huntington Beach. Plaintiffs and appellants Michael and Melanie Owens (plaintiffs) toured the development and viewed the model houses offered for sale. They purchased a house then under construction. Schulte acted as the seller's agent. When the house that was built varied from the model that plaintiffs believed they purchased, they brought an action against Hearthside for breach of contract, specific performance, and fraud in the inducement. Hearthside moved to compel arbitration and claimed that plaintiffs breached the sales contract by failing to close escrow thereby entitling Hearthside to keep plaintiffs' deposit as liquidated damages. The matter was arbitrated. Plaintiffs lost on their claims, Hearthside won on its claim, and the arbitrator awarded Hearthside $35,045. Plaintiffs then brought this action against Schulte asserting causes of action for fraud and deceit, breach of fiduciary duty, and negligence that sought to recover the loss they suffered in the arbitration. Schulte prevailed on a motion for summary judgment and plaintiffs appeal.[2] We asked the parties to submit supplemental briefs addressing whether we should affirm the summary judgment based on the inadequacy of the record due to plaintiffs' failure to provide a reporter's transcript or a suitable substitute and whether plaintiffs' breach of fiduciary duty and negligence causes of action are barred by collateral estoppel or issue preclusion. We affirm.

---

[1]    References to Hearthside will include Signal Landmark.

[2]    The summary judgment motion concerned plaintiffs' causes of action for breach of fiduciary duty and negligence. The trial court sustained Schulte's demurrer to plaintiffs' fraud and deceit cause of action, which ruling plaintiffs do not challenge on appeal.

# BACKGROUND

Brightwater was a developed community of newly constructed single-family residences in Huntington Beach.  Hearthside built, marketed, and sold the residences.  Prior to May 25, 2011, Hearthside implemented a number of construction cost saving measures to reduce the sales price of the residences.  As to one of the house models, the "Plan 3 Hampton Elevation," the cost saving measures included the elimination of wood tongue and groove porch ceilings and eaves and a reduction in the number of cedar shingles used on the exterior walls—i.e., only the front of the houses would have shingles, the sides and back would have stucco.

Schulte was a Hearthside salesperson for the Brightwater development.  On May 25, 2011, plaintiffs met with Schulte at Brightwater.  Schulte told plaintiffs to tour the development and "look at the product [you] are going to buy."  In their tour, plaintiffs observed that all of the finished "Hampton Elevation" houses had wood tongue and groove porch ceilings and eaves and cedar shingles on all four sides of the houses and on the second story.

Plaintiffs contend that Schulte did not tell them that Hearthside's cost saving measures included the elimination of wood tongue and groove porch ceilings and eaves and a reduction in the number of cedar shingles on the outside walls of houses then under construction, or that those cost saving measures would apply to the house they would buy.  Plaintiffs decided to purchase a "Plan 3 Hampton Elevation" house then under construction and believed that their house would be constructed with outside walls that were consistent with the Plan 3 Hampton Elevation houses that had already been built.  They executed a "Contract for Purchase and Sale and Escrow Instructions" (Agreement) to purchase the house and gave Hearthside a non-refundable $35,000 purchase deposit.

Section 13.3 of the Agreement, "Sales Agents—No Duty To Buyer," states: "Buyer understands and agrees that Seller's sales agent is the sole and exclusive agent of Seller, owes duties only to Seller, and is not the agent of Buyer.  Seller's sales agent expressly disclaims any duty to Buyer arising from this Contract or arising from the actions of such representative in soliciting Buyer's purchase of the Property.  Lastly,

3

Buyer agrees that no dual agency, agency, employment or other legal relationship between Buyer and Seller's sales agent is created or arises out of the transaction which is the subject of this Contract." The Agreement also contains a "Disclosure Regarding Real Estate Agency Relationships." On the second page of that disclosure, Schulte is identified as the agent of "the seller exclusively." Under the Agreement's integration clause, plaintiffs acknowledged, among other things, that "[e]xcept for any written warranties provided by Seller, neither Seller nor any sales representative, employee or agent of Seller has made any representation or warranty, express or implied, not contained herein concerning the subject matter hereof . . . ."

By August 14, 2011, plaintiffs discovered that Hearthside was not installing a wood tongue and groove porch ceiling and eaves on their house or fully shingling the outside walls of their house with cedar shingles. Plaintiff Michael Owens complained to Hearthside about these changes, asserting that Hearthside had not notified him about the changes. Over the ensuing weeks, the parties attempted to resolve the dispute over the alterations to plaintiffs' house. On September 14, 2011, Michael Owens sent Hearthside an email in which he stated that he and his wife were no longer interested in further discussing the purchase of their home and wanted to cancel the transaction. He requested "compensation for damages." If a "mutually agreeable damage amount" could be reached, he stated, plaintiffs would not need to resort to litigation.

On September 16, 2011, Hearthside's attorney emailed Michael Owens and informed him that Hearthside was willing to close escrow on the house as it was then being constructed or, if plaintiffs did not want to buy the house as constructed, to refund 100 percent of plaintiffs' deposit in exchange for a cancellation of the escrow. Michael Owens responded that the "offer" was "unacceptable at this time."

On October 25, 2011, plaintiffs brought an action against Hearthside for breach of contract and specific performance. The matter was arbitrated. In the arbitration, plaintiffs added a claim for fraud in the inducement. Hearthside claimed that plaintiffs breached the Agreement when they failed to close escrow, which breach entitled Hearthside to keep plaintiffs' deposit.

4

The arbitrator ruled that Hearthside had not breached the Agreement, that plaintiffs had breached the Agreement by failing to close escrow on their house, and that plaintiffs' claim for fraud in the inducement had "no merit." With respect to plaintiffs' fraud in the inducement claim, the arbitrator stated that "Schultz" [*sic*] "testified that she specifically told [plaintiffs] that the homes would not have four sides shingled, that this was one of the cost savings used by [Hearthside] in reducing the prices of the homes from $1,300,000 to $850,000. Ms. Schultz [*sic*] was a credible witness. There was no fraud by [Hearthside]." The arbitrator awarded Hearthside $25,500 in liquidated damages on their breach of contract claim, plus $9,545 in fees and costs for a total award of $35,045. The arbitrator's award thereafter was entered as a judgment.

Plaintiffs then brought this action against Schulte in which they asserted causes of action for fraud and deceit (disposed of on demurrer based on collateral estoppel), breach of fiduciary duty, and negligence. Plaintiffs' theory was that Schulte failed to disclose to them that Hearthside had decided to construct their house without a wood tongue and groove porch ceiling and eaves and to reduce the number of cedar shingles on the outside walls, Schulte's failure to disclose forced them to bring the action against Hearthside to "obtain the residence which they had been promised," Schulte lied while testifying in the arbitration, and they lost the arbitration as a result. Plaintiffs sought to recover from Schulte the arbitration award rendered against them, the attorney fees and costs they incurred in the arbitration, and the asserted loss of equity in the house they were going to purchase.

Schulte moved for summary judgment. In her motion, she argued that plaintiffs could not prevail on their breach of fiduciary duty cause of action because she did not have a fiduciary relationship with them and they were not damaged. She argued that plaintiffs could not prevail on their negligence cause of action because she did not owe them a duty of care and they were not damaged.

In their response to Schulte's separate statement of undisputed facts, plaintiffs did not dispute that "[t]hroughout all of this, Schulte was employed and compensated exclusively by Hearthside. She never received any compensation from Plaintiffs in

5

connection with the subject transaction, was never offered any compensation from Plaintiffs, and would not have received any compensation from Plaintiffs if the transaction had been completed."

Plaintiffs also did not dispute that they "did not provide Schulte's physical place of work; did not provide the equipment used by Schulte to perform her work; did not control the hours Schulte worked; did not control the type of work Schulte performed; had no right to terminate Schulte's employment; could not have taken any action which would have reduced Schulte's compensation or benefits, or otherwise affected her employment; and had absolutely no right whatsoever to direct or compel Schulte in any manner. . . . Schulte had no right to bind Plaintiffs to any contract; was never authorized to execute a contract on behalf of Plaintiffs; had no right to select the parcel of property, the elevation, the color scheme, and/or the housing options which were to be purchased by Plaintiffs; and was never given any authority, whether through a power-of-attorney or in some other form, to act in any manner on behalf of Plaintiffs."

The trial court granted Schulte's summary judgment motion. As to the breach of fiduciary duty cause of action, the trial court ruled that under Section 13.3 of the Agreement plaintiffs expressly acknowledged that Schulte owed a fiduciary duty only to the seller and not to the plaintiffs. As to the negligence cause of action, the trial court ruled that, assuming Schulte owed a duty of care to plaintiffs that she breached, plaintiffs did not suffer any damages. It ruled that plaintiffs' argument that Schulte was liable for the arbitration award against them under the "tort of another" theory failed because they were not required to file an action against Hearthside.

## DISCUSSION

With respect to their breach of fiduciary duty cause of action, plaintiffs contend that the trial court erred in granting summary judgment because there is a triable issue of fact about whether Schulte acted as their agent in their house purchase and thus owed them a fiduciary duty. With respect to their negligence cause of action, plaintiffs contend

6

that the trial court erred in granting summary judgment because there is a triable issue of fact about whether they suffered damages.

We asked the parties to submit supplemental letter briefs addressing the issue of whether the arbitrator's ruling that Schulte truthfully testified that she told plaintiffs about changes to the construction plans for their house is entitled to issue preclusive effect in this case and thus is a complete defense to plaintiffs causes of action.[3] Plaintiffs argue that the arbitrator's ruling is not entitled to issue preclusive effect because Schulte was not a party to the arbitration and the arbitrator did not address the issues of whether Schulte breached her duties to plaintiffs as a fiduciary and a real estate licensee. Plaintiffs also argue that the arbitrator's ruling is not dispositive because even if Schulte orally informed them about changes to the construction plans, Schulte had to give them those disclosures in writing to comply with her duties as a fiduciary and a real estate licensee. We hold that the arbitrator's ruling is entitled to issue preclusion and thus is a complete defense to plaintiffs' causes of action.[4]

## I.      Standard of Review

"Summary judgment is granted when the moving party demonstrates that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd.

---

[3]      In her letter brief, Schulte also argued that plaintiffs' breach of fiduciary duty and negligence causes of action are barred by the doctrine of res judicata. Because we hold that collateral estoppel bars plaintiffs' claims, we do not reach this issue.

[4]      In light of our holding, we do not address plaintiffs' contention that there is a triable issue of fact about whether Schulte acted as their agent in their house purchase and thus owed them a fiduciary duty. We address plaintiffs' damages contention in connection with our issue preclusion discussion.

(p)(2).)  We review an appeal of a summary judgment de novo, as the appeal only involves legal issues.  (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017, 90 Cal.Rptr.3d 1, 201 P.3d 1147.)"  (*Greene v. Bank of America* (2015) 236 Cal.App.4th 922, 932.)  "'Summary judgment is an appropriate remedy when the doctrine of res judicata in its subsidiary form of collateral estoppel refutes all triable issues of fact suggested by the pleadings and supporting documents.'  [Citation.]"  *Grinham v. Fielder* (2002) 99 Cal.App.4th 1049, 1053-1054 (*Grinham*).)

## II.      Application of Relevant Principles

"The doctrine of collateral estoppel, 'or issue preclusion, "precludes relitigation of issues argued and decided in prior proceedings."'  (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 [123 Cal.Rptr.2d 432, 51 P.3d 297].)  "'A prior determination by a tribunal will be given collateral estoppel effect when (1) the issue is identical to that decided in a former proceeding; (2) the issue was actually litigated and (3) necessarily decided; (4) the doctrine is asserted against a party to the former action or one who was in privity with such a party; and (5) the former decision is final and was made on the merits." (*Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1339 [79 Cal.Rptr.2d 763].'"  (*Greene, supra,* 236 Cal.App.4th at pp. 932-933.)

Collateral estoppel applies to arbitration awards.  (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 824-825, fn. 2 (*Vandenberg*); *Grinham, supra,* 99 Cal.App.4th at p. 1054.)  However, the court in *Vandenberg* said that "a private arbitration award, even if judicially confirmed, can have no collateral estoppel effect in favor of third persons unless the arbitral parties agreed, in the particular case, that such a consequence should apply." (*Vandenberg, supra,* 21 Cal.4th at p. 834.)

### A.      *Vandenberg and Grinham*

Relying on *Vandenberg, supra,* 21 Cal.4th 815, plaintiffs contend that the arbitrator's ruling can have no issue preclusive effect in this action because Schulte was not a party to the arbitration and there is no evidence that they and Hearthside agreed that

8

the arbitration would have issue preclusive effect in favor of third persons.[5] Issue preclusion applies in this case.

In *Vandenberg, supra,* 21 Cal.4th 815, the lessors of property brought an action against their lessee under various theories alleging that the lessee had installed and operated waste oil storage tanks that had leaked and contaminated their property. (*Id.* at p. 825.) The lessee tendered the matter to his insurers for a defense. (*Id.* at p. 826.) The matter proceeded to arbitration on a breach of lease theory, and the arbitrator awarded the lessors $4 million. (*Ibid.*) In his decision, "[t]he arbitrator indicated the discharge of contaminants was not sudden and accidental." (*Ibid.*) The arbitrator's award was confirmed by the Superior Court. (*Ibid.*) The lessee's insurers denied the lessee's request for indemnification and the lessee brought an action against the insurers arising out of their failure to defend, settle, or indemnify in the lessors' action. (*Ibid.*)

The insurers filed a motion for summary adjudication arguing that they had no duty to defend or indemnify because their policies had pollution exclusions that were triggered by the arbitrator's determination that the contamination was not "sudden and accidental."[6] (*Vandenberg, supra,* 21 Cal.4th at pp. 826-827.) The insurers argued that the doctrine of collateral estoppel precluded the lessee's relitigation of the "sudden and accidental" issue. (*Id.* at p. 827.) The trial court agreed and granted the motion. (*Ibid.*) The court of appeal reversed. (*Ibid.*)

In affirming the court of appeal's reversal, the California Supreme Court stated, "Collateral estoppel (like the narrower 'claim preclusion' aspect of res judicata) is intended to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation. [Citation.] However, even where the minimal prerequisites for invocation of the doctrine are present, collateral

---

[5] Schulte does not contend that the arbitration agreement provided that the arbitration would have collateral estoppel effect in favor of third persons.

[6] The insurance companies filed a second summary adjudication motion on grounds not at issue here.

9

estoppel "'is not an inflexible, universally applicable principle; policy considerations may limit its use where the . . . underpinnings of the doctrine are outweighed by other factors.'" [Citations.] [¶] Whether collateral estoppel is fair and consistent with public policy in a particular case depends in part upon the character of the forum that first decided the issue later sought to be foreclosed." (*Vandenberg, supra,* 21 Cal.4th at p. 829.)

The Supreme Court then considered whether it would be fair and consistent with public policy to allow a nonparty to a private arbitration to rely on the doctrine of collateral estoppel with respect to a ruling by the arbitrator against one of the parties to the arbitration. It observed that "while the informal and imprecise nature of private arbitration, and its insulation from judicial interference, are '"the very advantages the . . . parties [seek] to achieve"' in arbitrating *their own claims* [citation], these same features can be serious, unexpected disadvantages if issues decided by the arbitrator are given leveraged effect in favor of strangers to the arbitration." (*Vandenberg, supra,* 21 Cal.4th at p. 832.) The Supreme Court concluded that it "face[d] a situation in which the policies underlying the doctrine of collateral estoppel must yield to the contractual basis of private arbitration, i.e., the principle that the scope and effect of the arbitration are for the parties themselves to decide." (*Id.* at pp. 833-834.) It then held that "a private arbitration award, even if judicially confirmed, can have no collateral estoppel effect in favor of third persons unless the arbitral parties agreed, in the particular case, that such a consequence should apply." (*Id.* at p. 834.)

In *Grinham, supra,* 99 Cal.App.4th 1049, Triple A Machine Shop (Triple A) entered into a written agreement with Hydrex Termite Pest Control Co. San Jose for construction services to be performed at Triple A's shop. (*Id.* at p. 1052.) Ronald Grinham signed the agreement as contractor. (*Ibid.*) Dissatisfied with the work performed, Triple A brought a breach of contract action against Hydrex Termite Pest Control Co. San Jose and Grinham. (*Ibid.*) It subsequently joined Philip and Judy Fielder and Hydrex Termite Pest Control of Santa Clara County as Grinham's employers. (*Ibid.*)

10

The written agreement provided for mandatory arbitration. (*Grinham, supra,* 99 Cal.App.4th at p. 1052.) When Triple A, Grinham, and the Fielders appeared before an arbitrator, the Fielders objected that they were not parties to the written agreement with Triple A and thus were not obligated to arbitrate the construction dispute. (*Ibid.*) Notwithstanding their objection, the Fielders participated in the arbitration and presented evidence of their non-liability. (*Ibid.*)

The arbitrator ruled in Triple A's favor, awarding it $14,822 against Grinham. (*Grinham, supra,* 99 Cal.App.4th at p. 1052.) He also ruled that the Fielders, both individually and doing business as Hydrex Pest Control of Santa Clara County were not liable to Triple A because Grinham had exceeded the scope of his authority as their actual or ostensible agent. (*Ibid.*) The arbitrator ruled that Grinham had misled Triple A and that the dispute concerned an issue of credibility as Grinham's declaration—submitted in lieu of testimony—differed from the Fielders' testimony. (*Ibid.*) The Superior Court of Contra Costa County confirmed the arbitrator's award and entered judgment against Grinham. (*Ibid.*)

Thereafter, with the judgment unsatisfied, Triple A brought an action against Grinham and others to set aside allegedly fraudulent property transfers by Grinham. (*Grinham, supra,* 99 Cal.App.4th at p. 1051.) Grinham filed a cross-complaint against the Fielders, asserting causes of action for declaratory relief and contribution. (*Ibid.*) The Fielders file a motion for summary judgment based on res judicata and collateral estoppel. (*Ibid.*) Grinham opposed the Fielders' summary judgment motion, declaring that when he contracted with Triple A, he acted as the Fielders' agent and within the scope and authority of his agency. (*Id.* at p. 1052.) The trial court granted the Fielders' summary judgment motion based on the doctrine of collateral estoppel. (*Id.* at p. 1053.) It reasoned that the arbitrator decided that Grinham "'fraudulently used [the] Fielders' business name . . . to defraud Triple A[] and that [the] Fielders had no liability.'" (*Ibid.*)

On appeal, Grinham, relying on *Vandenberg, supra,* 21 Cal.4th 815, contended, among other things, that the trial court erred in granting summary judgment because the Fielders could not rely on the arbitrator's findings and decision as the Fielders were

11

nonparties to the construction agreement and the arbitration. (*Id.* at p. 1053.) He "point[ed] out that the Fielders objected to the arbitration, claiming that they were not parties to the construction agreement. He add[ed] that the arbitrator stated that the Fielders contested jurisdiction and that the arbitrator ultimately found that they were 'not bound to arbitrate th[e] dispute' with Triple A because they were not parties to the construction agreement." (*Ibid.*)

The court of appeal affirmed the grant of summary judgment "because the issues of Grinham's actual or ostensible agency and the Fielders' liability for his actions were determined in the arbitration proceeding. The arbitrator specifically found that Grinham acted outside his actual agency or scope of employment when he entered into the Triple A agreement under a fictitious business name but with the Fielders' business address and telephone number." (*Grinham, supra,* 99 Cal.App.4th at p. 1054.)

The court of appeal explained that while the Fielders contested jurisdiction in the arbitration, they participated in the arbitration completely, presenting testimony and raising legal arguments concerning Grinham's actual and ostensible authority to bind Hydrex Pest Control of Santa Clara County to the construction contract with Triple A. (*Grinham, supra,* 99 Cal.App.4th at p. 1054.) The court of appeal stated, "The arbitrator recognized that the arbitration primarily concerned who contracted with Triple A to repair and seal the concrete floor. Moreover, the arbitration award recognized the Fielders and Hydrex Pest Control of Santa Clara County as parties to the proceeding who contested liability and who were entitled to recover costs of suit. These circumstances differ from *Vandenberg v. Superior Court, supra,* 21 Cal.4th 815, where a nonparty to the arbitration sought to apply collateral estoppel to the arbitrator's findings in a subsequent suit." (*Ibid.*)

In their arbitration against Hearthside, plaintiffs asserted a cause of action for fraud in the inducement. With respect to that cause of action, the arbitrator ruled, "That claim has no merit. [Plaintiffs] themselves testified that they were never told the property would have four sides of shingles. In fact, Lori Schultz [*sic*], the sales agent for [Hearthside], testified that she specifically told [plaintiffs] that the homes would not have

12

four sides shingled, that this was one of the cost savings used by [Hearthside] in reducing the prices of the homes from $1,300,000 to $850,000.00. Ms. Schultz [*sic*] was a credible witness. There was no fraud by [Hearthside]."

Although Schulte apparently did not participate completely in plaintiffs' arbitration with Hearthside by raising legal arguments about her liability, she was not a "stranger to the arbitration." (See *Vandenberg, supra,* 21 Cal.4th at page 832.) Rather, Schulte, by her testimony, participated completely in the arbitration on the issue of whether she told plaintiffs about changes to the construction plans for their house—i.e., the issue upon which both of plaintiffs' causes of action in this case depend. Thus, the application of issue preclusion in this case to the arbitrator's findings with respect to Schulte's disclosure to plaintiffs of changes to the construction plans for their house is not the type of "unexpected disadvantage" *Vandenberg* addresses. (*Ibid.*) Instead, Schulte's participation and testimony in the arbitration between plaintiffs and Hearthside and the arbitrator's ruling come within the holding in *Grinham, supra,* 99 Cal.App.4th at pages 1053-1054 that a non-party to an arbitration agreement may, under certain circumstances, raise collateral estoppel or issue preclusion as a defense against a party to the arbitration based on the arbitrator's rulings or decision. Accordingly, the arbitrator's ruling that Schulte truthfully testified that she told plaintiffs about changes to the construction plans for their house is entitled to issue preclusive effect in this case if it otherwise meets the requirements of issue preclusion.

### B.    *Issue Preclusive Effect of the Arbitrator's Ruling*

In this case, plaintiffs asserted two causes of action against Schulte—breach of fiduciary duty and negligence. The basis for those causes of action was plaintiffs' claim that Schulte made false representations to them concerning the construction plans for their house, those misrepresentations caused them to enter into the Agreement, litigation and an arbitration ensued when they discovered Schulte's misrepresentations, Schulte then lied while testifying in the arbitration, and they lost the arbitration and suffered an adverse award as a result of Schulte's perjury. Plaintiffs' claims thus depend on a

13

determination that Schulte misrepresented the manner in which plaintiffs' house was to be constructed.

Because the issue of whether Schulte misrepresented the manner in which plaintiffs' house was to be constructed was argued and decided against plaintiffs in the arbitration, issue preclusion prevents relitigation of the issue and thus is a complete defense to plaintiffs' breach of fiduciary duty and negligence causes of action even though the arbitrator did not specifically address any duties Schulte owed plaintiffs as a fiduciary or a real estate licensee. That is, the issue of whether Schulte misrepresented the manner in which plaintiffs' house was to be constructed was identical in both plaintiffs' present action and in the arbitration, it was actually litigated in the arbitration, its determination was necessary for the arbitrator's ruling on plaintiffs' fraud in the inducement cause of action against Hearthside, plaintiffs were a party to the arbitration, and the arbitration award was final on the merits with a subsequent judgment having been entered. (*Greene, supra,* 236 Cal.App.4th at pp. 932-933.)

Plaintiffs argue that even if Schulte was entitled to claim that that the arbitrator's ruling was entitled to issue preclusive effect in this case, the finding that she orally told plaintiffs about changes to the construction plans for their house does not defeat their claims against Schulte for breach of fiduciary duty and negligence. They claim they still could have established Schulte's breach of fiduciary duty by her failure "to provide the disclosures in writing," failure "to have the written disclosures signed and returned to escrow like other buyers were handled," failure "to provide Plaintiffs with a copy of the contract at signing as required by the code," and "fraudulently forging the six-page disclosure document to conceal her failure to make written disclosures and sabotage Plaintiffs' litigation with [Hearthside]." They claim they could have shown that Schulte was professionally negligent by failing to provide written disclosures of material changes to the construction plans and by "forging the six-page disclosure document."

Even assuming plaintiffs could show that Schulte failed to provide them with written disclosures about changes to the construction plans for their house and covered up her failure by "forging the six-page disclosure document," summary judgment still was

14

appropriate because plaintiffs had no damages.  (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 932 [damages are an element of a cause of action for breach of fiduciary duty]; *Giacometti v. Aulla, LLC* (2010) 187 Cal.App.4th 1133, 1137 [damages are an element of a cause of action for professional negligence].)  The gravamen of plaintiffs' causes of action is that they purchased the house without having been informed of the changes to the construction plans or based on Schulte's misrepresentations about those plans.  If, as the arbitrator found, Schulte truthfully informed plaintiffs of the changes, plaintiffs entered into a contract to purchase the house knowing of the changes and thus suffered no damages by not also being informed in writing.

### III.   Adequacy of the Record

We asked the parties to brief the issue of whether we should affirm the summary judgment based on the inadequacy of the record due to plaintiffs' failure to provide a reporter's transcript or a suitable substitute.  We need not reach this issue based on our holding that issue preclusion prevented plaintiffs from asserting their claims against Schulte.

### DISPOSITION

The judgment is affirmed.  Schulte is awarded her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, Acting P. J.

We concur:



KRIEGLER, J.



BAKER, J.

15